**LAW OFFICES OF KENNETH L. BAUM LLC**
167 Main Street
Hackensack, New Jersey 07601
(201) 853-3030
(201) 584-0297 Facsimile
Attorneys for Defendant,
Educational Credit Management Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>KEVIN JARED ROSENBERG,<br><br>        Debtor. | CASE NO. 18-35379-cgm<br><br>Chapter 7 |
| KEVIN JARED ROSENBERG,<br><br>        Plaintiff,<br><br>v.<br><br>NY STATE HIGHER EDUCATION SERVICES CORPORATION, YESHIVA UNIVERSITY, ACCESSLEX INSTITUTE d/b/a ACCESS GROUP, and EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br><br>        Defendants. | ADV. PRO. NO. 18-09023-cgm |

**MOTION FOR LEAVE TO APPEAL INTERLOCUTORY ORDER**

    Defendant Educational Credit Management Corporation ("ECMC"), pursuant to Bankr.Proc.Rule 8004, hereby applies for leave to appeal the interlocutory portion of the "Order Granting Summary Judgment in Favor of Plaintiff and Discharging Debtor's Student Loan Under 11 U.S.C. § 523(a)(8)" dated January 7, 2020 [Docket No. 68] (the "Bankruptcy Court Order"). Plaintiff Kevin Jared Rosenberg and ECMC brought cross-motions for summary judgment

before the Honorable Cecelia G. Morris, Chief United States Bankruptcy Court Judge. The Bankruptcy Court granted Plaintiff's motion for summary judgment, and denied ECMC's motion for summary judgment. The denial of ECMC's summary judgment motion is the interlocutory portion of the Bankruptcy Court Order that is the subject of this motion.

### A. FACTS NECESSARY TO UNDERSTAND QUESTION PRESENTED

The facts underlying ECMC's summary judgment motion are not in dispute. Plaintiff is a 46-year-old, healthy individual with no dependents. He is college-educated, with B.A. and J.D. degrees – the latter of which was financed through federal student loans currently held by ECMC. Plaintiff is licensed to practice law in the states of New York and New Jersey. He voluntarily left his first job as an associate attorney at a law firm after only 2 ½ months because he did not find the work interesting. Plaintiff, with the exception of a brief period of working as a part-time contract attorney, has not sought any other employment in the legal profession and has no intention of ever doing so. The record contains an uncontroverted vocational expert evaluation which demonstrates that earning opportunities abound for Plaintiff in the legal profession. Instead of pursuing those opportunities available to him, and paying back his taxpayer-backed federal student loans, Plaintiff, for the past 10 years, has held various positions in the outdoor adventure industry, including starting up and running his own tour guide business.

Section 523(a)(8) of the Bankruptcy Code provides that a student loan debt is not dischargeable unless "excepting such debt from discharge…will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. 523(a)(8). The Second Circuit adopted the Brunner standard for "undue hardship." Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner), 831 F.2d 395 (2d Cir. 1987) (per curiam). Under the Brunner test, a debtor claiming "undue hardship" must demonstrate:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. at 396. Over the next twenty years, seven other federal circuits followed suit, adopting Brunner as the test for determining undue hardship. Along the way, a breadth of case law has emerged. Because Congress selected the word 'undue,' the required hardship under Section 523 must be more than the usual hardship that accompanies bankruptcy. Inability to pay one's debts by itself cannot be sufficient to establish an undue hardship; otherwise all bankruptcy litigants would have an undue hardship. Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 399 (4th Cir. 2005).

The Bankruptcy Court in the case at hand rejected 32 years of case law applying the Brunner test in order to determine, on summary judgment, that Plaintiff met his burden to establish an undue hardship, thereby discharging Plaintiff's entire student loan debt of approximately $221,385.

### B.   THE QUESTION ITSELF

Should ECMC be granted leave to appeal the interlocutory portion of the Bankruptcy Court Order; namely, the portion of the order denying ECMC's motion for summary judgment?

### C.   THE RELIEF SOUGHT

ECMC seeks reversal of the Bankruptcy Court's denial of its motion for summary judgment.

**D.    THE REASONS WHY LEAVE TO APPEAL SHOULD BE GRANTED**

Plaintiff and ECMC brought cross-motions for summary judgment on the same statute, 11 U.S.C. § 523(a)(8), which determines dischargeability of student loans in bankruptcy. Review of the cross-motions for summary judgment require analysis of the same statute, the same set of caselaw, and application of the same test.  The issues presented by both motions are inextricably bound.

While the portion of the order denying ECMC's motion for summary judgment is not a final decision of the bankruptcy court, and not generally appealable under normal circumstances, in situations where the reviewing court is reviewing cross-motions for summary judgment, the district court may exercise its discretion to review the otherwise unappealable order in the interests of judicial economy. *See* Barhold v. Rodriguez, 863 F.2d 233, 237 (2d Cir. 1988), Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc., 716 F.3d 302, 320 (2d Cir. 2013).

**E.    A COPY OF THE INTERLOCUTORY ORDER OR DECREE AND ANY RELATED OPINION OR MEMORANDUM**

A copy of the Bankruptcy Court Order is attached as Exhibit A.


*/s/ Kenneth L. Baum*                                                                  Date: January 17, 2020
Signature of attorney for appellant

Kenneth L. Baum
Law Offices of Kenneth L. Baum LLC
167 Main Street
Hackensack, NJ 07601
Telephone: (201) 853-3030
Facsimile: (201) 584-0297
kbaum@kenbaumdebtsolutions.com

*Counsel for Educational Credit Management Corporation*

# EXHIBIT A

**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
:    Chapter 7
In re:                                                       :
:    Case No. 18-35379   (CGM)
Kevin Jared Rosenberg,                                       :
:
                            Petitioner.                      :
:
-------------------------------------------------------------X
:
Kevin Jared Rosenberg,                                       :    Adv. No. 18-09023   (CGM)
:
                            Plaintiff,                       :
:
     v.                                                      :
:
:
N.Y. State Higher Education Services Corp., et. al,          :
:
                            Defendants.                      :
:
-------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AND DISCHARGING DEBTOR'S STUDENT LOAN UNDER 11 U.SC. § 523(a)(8)**

**A P P E A R A N C E S :**

Kevin Jared Rosenberg, *pro se*

Kenneth L. Baum, Esq.
LAW OFFICES OF KENNETH L. BAUM LLC
167 Main Street
Hackensack, New Jersey 07601
Attorneys for Defendant, Educational Credit Management Corporation

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The Petitioner, Kevin Jared Rosenberg, brings this summary judgment asking the Court to declare the debt owed to Educational Credit Management Corporation ("ECMC") dischargeable, pursuant to § 523(a)(8).  For the reasons set forth in this Memorandum Decision, Plaintiff's motion for summary judgment is granted.  Defendant's cross-motion for summary judgment is denied.

## **Jurisdiction**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

## **Background**

Petitioner filed a petition for relief under chapter 7 of the Bankruptcy Code on March 12, 2018.  Vol. Pet., No. 18-35379-cgm, (Bankr. S.D.N.Y. Mar. 12, 2018), ECF No. 1.  The Petitioner received a discharge of his debts on July 26, 2019. Order Dischrg., No. 18-35379-cgm, (Bankr. S.D.N.Y. Mar. 12, 2018), ECF No. 13.

On June 18, 2018, the Petitioner[1] filed this adversary proceeding to have his student loan debt declared dischargeable, pursuant to 11 U.S.C. § 523(a)(8).  Complt., Adv. No. 18-09023-cgm, (Bankr. S.D.N.Y. June 18, 2018), ECF. No. 1.[2]  On November 14, 2018, the parties entered into a consent order, which authorized ECMC to intervene in this adversary proceeding as the "holder[] of one … federal consolidation loan owed by Plaintiff" ("Student Loan") ECF No. 18.

---

[1] Petitioner is *pro se*. As such, this Court will "liberally construe" his documents as required by the Supreme Court in *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).
[2] All citations to ECF that do not contain a case number are to the docket of this adversary proceeding, No. 18-09023-cgm.

Page **2** of **12**

Petitioner filed a motion for summary judgement (the "Motion," ECF No. 44) on August 27, 2019.  ECMC filed a Cross Motion for Summary Judgement and opposition to Petitioner's motion (the "Cross Motion," ECF No. 49) on October 8, 2019.   The parties agree that there are no genuine issues of material fact and that this issue is ripe for summary judgment.  *See* Motion; Cross Motion at 7, Ex. 4.

The Court held a hearing on October 29, 2019 and asked the parties to provide the Court with evidence as to the current promissory note, the current terms of the loan, the current principal balance, and a payment history.  ECMC filed a response which contains payment history since consolidation of the loan.  "Supp. Resp.", ECF No. 58.

Petitioner began borrowing money to fund his education in August 1993.  Supp. Resp., Ex. B (loan history). From 1993 until 1996, Petitioner continued to borrow money to pay for his undergraduate education at the University of Arizona.  *Id.*  After obtaining a Bachelor of Arts degree in History, he served in the United States Navy on active duty for five years. Counter-Statement of Mat. Facts ¶ 5, ECF No. 49, Ex. 3.  After completing his tour of duty, Petitioner attended Cardozo Law School at Yeshiva University where he applied for and received additional student loans to cover his tuition and board from 2001 through 2004. Supp. Resp., Ex. B (loan history).  After graduating from law school, Petitioner consolidated his Student Loan on April 22, 2005 in the original principal amount of $116,464.75.  The total outstanding balance of this Student Loan as of November 19, 2019 was $221,385.49 with an interest rate of 3.38% per annum.  *Id.* ¶ 12.  The dischargeability of this Student Loan is the subject of these summary judgment motions.

**<u>Discussion</u>**

*Summary Judgment Standard*

Pursuant to Rule 56(c), incorporated by Bankruptcy Rule 7056(c) in this adversary proceeding, summary judgment should be granted to the moving party if the Court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (quoting Fed. R. Civ. P. 56(c)).  The materiality of facts must be determined with reference to the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *In re CIS Corp.*, 214 B.R. 108, 118 (Bankr.S.D.N.Y.1997).

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322–23.  A moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. *Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir.1994).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir.1997).  The nonmoving party should oppose the motion for summary judgment with evidence that is admissible at trial. *See* Fed. R. Civ. P. 56(e)(1); *Crawford v. Dep't of Investigation*, 324 F. App'x 139, 143 (2d Cir. 2009) (affirming award of summary judgment in favor of defendant, where plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor, and conclusory allegations").

*Dischargeability of Student Loans under 11 U.S.C. § 523(a)(8)*

Section 523(a)(8) states:

A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

(A)

(i)    an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii)   an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

Both the Petitioner and ECMC agree that the proper test to be applied in this instance is

*Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 831 F.2d 395, 396 (2d Cir.

1987). The test set forth in *Brunner* is

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
(3) that the debtor has made good faith efforts to repay the loans.

*Id.*

*Brunner* has received a lot of criticism for creating too high of a burden for most

bankruptcy petitioners to meet. For petitioners like Brunner, who filed for bankruptcy

approximately seven months after receiving a degree, the *Brunner* test is difficult to meet. *See,*

*e.g.*, *Gesinde v. U.S. Dep't. of Ed. (In re Gesinde)*. 2019 WL 5090080, No. 18-01434 (Bankr.

S.D.N.Y. Oct. 10, 2019) (denying discharge of student loans where petitioner files for bankruptcy less than one year after graduating from school). However, for a multitude of petitioners like Mr. Rosenberg, who have been out of school and struggling with student loan debt for many years, the test itself is fairly straight-forward and simple.

The harsh results that often are associated with *Brunner* are actually the result of cases interpreting *Brunner*. Over the past 32 years, many cases have pinned on *Brunner* punitive standards that are not contained therein. *See Briscoe v. Bank of N.Y. (In re Briscoe)*, 16 B.R. 128, 131 (Bankr. S.D.N.Y. 1981) (coining the infamous and oft-repeated term "certainty of hopelessness"[3] but not applying the *Brunner* test, which was established six years later); *see also Jean-Baptiste v. Educ. Credit Mgmt. Corp. (In re Jean-Baptiste)*, 2018 WL 1267944, *10 (Bankr. E.D.N.Y Feb. 23, 2018) (requiring proof of a "certainty of hopelessness" despite the plain and straightforward language of *Brunner*). Those retributive dicta were then applied and reapplied so frequently in the context of *Brunner* that they have subsumed the actual language of the *Brunner* test. They have become a quasi-standard of mythic proportions so much so that most people (bankruptcy professionals as well as lay individuals) believe it impossible to discharge student loans.

To this end, some courts have even called it "bad faith" when someone struggling with repaying a student loan attempts to discharge that debt in bankruptcy court.[4] *See In re L.K.*, 351 B.R. 45, 55-56 (Bankr. E.D.N.Y. 2009) (denying discharge to debtor whose student loan debt constituted 70% of debt scheduled in bankruptcy case); *Holzer v. Wachovia Servs., Inc. (In re*

---

[3] Of course, a harsh standard made sense when student loans were fully dischargeable after making only five years of payments and when the total due on the loan was approximately $9,000 for both undergraduate and graduate student loans. *See Brunner v. N.Y. State Higher Ed. Serv's. Corp. (In re Brunner)*, 46 B.R.753, 753 (S.D.N.Y. 1985).

[4] The Court is not insinuating that filing a bankruptcy petition in order to rid oneself of a crushing $300,000+ of student loan debt could ever be considered "bad faith." Bankruptcy is an available and beneficial option for anyone struggling with debt and a petitioner under the Bankruptcy Code always has the option to come before the Court and ask, in good faith, that a debt be discharged—no matter what kind of debt it is.

*Holzer)*, 33 B.R. 627, 632 (Bankr. S.D.N.Y. 1983) (good faith prong not satisfied where student loans were only debts listed in debtor's schedules); *D'Ettore v. DeVry Inst. of Tech. (In re D'Ettore)*, 106 B.R. 715, 719 (Bankr. M.D. Fla. 1989) (dismissing debtor's complaint where student loans constituted 82% of debtor's total debts).

This Court will not participate in perpetuating these myths. *See Krieger v. Educs. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013) ("It is important not to allow judicial glosses . . . to supersede the statute itself."). Rather, this Court will apply the *Brunner* test as it was originally intended.

*Brunner Test*

1. **Whether the Petitioner cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans.**

Under the first prong of the test, the Court must determine "that the debtor cannot maintain, based on ***current*** income and expenses, a "minimal" standard of living for [him]self and h[is] dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396 (emphasis added). It should be noted that the test asks the Court to base its determination as to whether Petitioner can maintain a "minimal" standard of living using only Petitioner's "current income and expenses." *Id.*

Section 707(b)(2) codifies the "means test," which is a formula that calculates a bankruptcy petitioner's average monthly disposable income over a 60-month period by deducting statutorily specified allowable expenses, secured debt payments, and priority debt payments from current monthly income. *In re Perelman*, 419 B.R. 168, 172 (Bankr. E.D.N.Y. 2009). "Current monthly income" is defined in 11 U.S.C. § 101(10A) as the average monthly income of a debtor from all sources in the six-month period prior to commencement of the

bankruptcy case. The authorized deductions from current monthly income are detailed in § 707(b)(2)(A)(ii-iv).

Here, Petitioner's means test lists his monthly income as $3,136.24 and his annual income as $37,634.88.  Ch.7 Stmt. Current Monthly Income, No. 18-35379-cgm (Bankr. S.D.N.Y), ECF No. 1.  Petitioner lists his income and expenses on schedules I &J as:  $2,456.24 (income) and $4005.00 (expenses).   Sched. I & J, No. 18-35379-cgm (Bankr. S.D.N.Y), ECF No. 1.  Leaving the Petitioner with a current monthly income of -$1,548.74 at the time of filing.  Thus, Petitioner has declared under penalty of perjury that he has negative income each month. *Id.*

The Bankruptcy Code presumes that a petitioner who seeks its protection "will deal honestly and fairly with creditors by furnishing a complete and accurate schedule of assets." *Banc. One, Texas, N.A. v. Braymer (In re Braymer)*, 126 B.R. 499, 503 (Bankr. N.D. Tex. 1991) (internal quotations and citations omitted).  "[T]he bankruptcy schedules and statement of financial affairs of a debtor serve a vital role for creditors in a bankruptcy case, in that they ensure that adequate and truthful information is available to trustees and creditors, not just an objecting creditor, without the need for further investigation to determine whether or not the information is true and correct." *Mullen v. Jones (In re Jones)*, 445 B.R. 677, 726–27 (Bankr.N.D.Tex. 2011). "Complete and honest disclosure is therefore a condition precedent to the privilege of discharge."  *Schechter v. Hansen (In re Hansen)*, 325 B.R 746, 757 (Bankr. N.D. Ill. 2005); *see also First United Bank & Trust Co. v. Buescher (In re Buescher),* 491 B.R. 419, 432 (Bankr. E.D. Tex. 2013) ("[C]omplete financial disclosure is a condition precedent to the privilege of discharge.").  Neither ECMC nor any other party in interest has objected to

Petitioner's schedules or means test and Petitioner has received a discharge.  Therefore, the Court accepts the Petitioner's income and expenses as undisputed.

As of the filing of this bankruptcy case, Petitioner's Student Loan "is currently in default."  Supp. Resp. ¶ 13.  As such, his Student Loan is currently due and payable in the full amount of $221,385.49, plus interest and costs.  Petitioner has successfully proven that he cannot immediately pay his Student Loan in full on his current income.

Petitioner is not currently in a repayment plan nor is he eligible for one.  To become eligible for a monthly repayment plan, Petitioner would have to rehabilitate his loan by agreeing, in writing, "to make nine voluntary, reasonable and affordable monthly payments within 20 days of the due date, and make all nine payments during a period of 10 consecutive months.  [Petitioner]'s rehabilitation payment would depend on his current monthly income." *Id.*  Such an agreement is not currently before the Court.  *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) ("[A]n unaccepted settlement offer or offer of judgment does not moot a plaintiff's case.").  And the question of whether the Petitioner could maintain a minimal standard of living while rehabilitating his Student Loan "is appropriately reserved for a case in which it is not hypothetical." *Id.*

As the Petitioner has a negative income each month, he has no money available to repay his Student Loan and maintain a "minimal" standard of living.  This prong of the test is met.

2. **Whether additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans?**

Next, the Court must consider whether "additional circumstances[5] exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the

---

[5] In an unpublished decision, the Court of Appeals for the Second Circuit stated that "the second prong was not satisfied where the debtor was not disabled or elderly, had no dependents, and no evidence was presented indicating a total foreclosure of job prospects in her area of training." *Traversa v. Education Credit Management Corp. (In re*

student loans." *Brunner*, 831 F.2d at 396 (emphasis added).  It should be noted that the *Brunner* test does not require the Court to make a determination that the Petitioner's state of affairs are going to persist forever, as ECMC argues was required in the case of *Norasteh v. Boston Univ. (In re Norasteh)*, 311 B.R. 671, 678 (Bankr. S.D.N.Y. 2004).  Nor does the test require that the Court make a determination about whether the Petitioner's "state of affairs" was created by "choice" as ECMC suggests in its papers.

The Court need only consider whether the Petitioner's present state of affairs is likely to persist "for a significant portion of the repayment period of the [current contractual] student loans."  *See* ABI Commission on Consumer Bankruptcy, Final Report of the ABI Commission on Consumer Bankruptcy 2017-2019 Final Report and Recommendations, at 12 Robert M. Lawless (2019) (recommending that "the court consider 'the debt' and not some different contract the debtor and the creditor might have made under different circumstances.").

Here, the repayment period has ended. Petitioner is in default and his loan was accelerated.  As of November 19, 2019, Petitioner is responsible for the repayment of the full amount of $221,385.49. His circumstances will certainly exist for the remainder of the repayment period as the repayment period has ended and the loan is due and payable in the full amount.  The second prong of the *Brunner* test is, therefore, satisfied.

### 3. Whether the debtor has made good faith efforts to repay the loans?

Turning to the third and final prong, the Court must determine whether "the debtor **_has made_** good faith efforts to repay the loans."  *Brunner*, 831 F.2d at 396 (emphasis added).  The *Brunner* test asks the Court to look at whether the Petitioner "has made" good faith efforts to repay the loan, which indicates that the Court should only consider Petitioner's past (*i.e.*

---

*Traversa)*, 444 Fed. Appx. 728 (2d Cir. Oct. 28, 2011).  Neither the Bankruptcy Code nor *Brunner* requires that a Debtor be disabled or elderly.  Section 523(a)(8) requires only that a bankruptcy court find that excepting a student loan debt from discharge would impose an "undue hardship" on a bankruptcy petitioner.

prepetition) behavior in repaying the loans.  It is therefore inappropriate to consider: Petitioner's reasons for filing bankruptcy; how much debt he has; or whether the Petitioner rejected repayment options. *But see Kelly v. Sallie Mae Serv. (In re Kelly)*, 351 B.R. 45, 54-55 (Bankr. E.D.N.Y. 2006) (concluding debtor failed to show good faith because she rejected consolidation options).

Based on the loan history provided by ECMC, Petitioner missed only 16 payments in the almost 13 years since this Student Loan originated in April 2005.  Supp. Resp., ECF No. 58. Ex. E.  From April 2005 until April 5, 2015, the loan was in deferment or forbearance. *Id.* No payments were due and no late fees were charged.  *See id.* at Exs. E & F.  Thus, until April 2015—Petitioner was fully current on this debt and no payments were due.  *Id.*

On April 6, 2015, the loan went into income-based repayment for one year. *Id.* at Ex. F. Debtor testified at his deposition that he was to make payments of "$300 a month for the first year, and it was going to increase by a hundred dollars a month every year thereafter with a maximum of a thousand dollars a month until it was repaid." Response, Ex. 2 (Deposition at 154, ¶ 15-19).  This has not been refuted by ECMC and matches the Student Loan payment history provided by ECMC.  During the first year of the repayment plan period, Petitioner made six payments of varying amounts. Supp. Resp., Ex. E. (On May 26, 2015, Petitioner makes a payment of $229.31; $500 on August 14, 2015; $300 on October 14, 2015; $346.55 on November 3, 2015; $458.62 on January 2, 2016; $249.42 on February 21, 2016.

His income-based repayment plan ended in April 2016 and the account was in forbearance again from April 6, 2016 through October 5, 2016. *Id.*  Despite the fact that no payments were due, Petitioner continued making payments. *Id.* (On April 19, 2016, Petitioner

makes a payment of $700; On July 18, 2018, Petitioner makes a payment of $50; On September 25, 2016, Petitioner makes a payment of $50).

The Petitioner's Student Loan entered into standard repayment period on October 6, 2016 and the Petitioner made one additional payment of $100 on February 19, 2017. *Id.* On January 8, 2018, account entered default and was paid in full by the guarantor. *Id.*

Petitioner made 10 payments, in varying amounts, during the 26 months that the Petitioner was responsible for making payments, which is approximately a 40% rate of payment over a thirteen-year period. Additionally, the Petitioner did not sit back for 20 years but made a good faith effort to repay his Student Loan. He actively called and requested forbearance on at least five separate occasions, all of which were granted by the servicer. *See* Ex. F.

The Petitioner has demonstrated a good faith effort to repay the loan and has satisfied the "undue hardship" standard of 11 U.S.C. § 523(a)(8).

## Conclusion

For the foregoing reasons, Petitioner has satisfied the *Brunner* test. Based on the foregoing, it is hereby ORDERED that Student Loan imposes an undue hardship on the Petitioner and is discharged.



**Dated: January 7, 2020**
      **Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**Chief U.S. Bankruptcy Judge**