UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Bankr. Case No. 18-35379-cgm |
| KEVIN JARED ROSENBERG, | Adv. Pro. No. 18-09023-cgm |
| Debtor. | |

| | |
|---|---|
| KEVIN JARED ROSENBERG, | Case No. 7:20-cv-00688-PMH |
| Plaintiff-<br>Appellee, | On Appeal from Order Granting Summary Judgment in Favor of Plaintiff and Discharging Debtor's Student Loan Under 11 U.S.C. § 523(a)(8) entered on January 24, 2020, by the Honorable Cecelia G. Morris, Chief U.S.B.J. |
| v. | |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | |
| Defendant-<br>Appellant. | |

## APPELLANT EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S BRIEF

Law Offices of Kenneth L. Baum LLC
Kenneth L. Baum (KB-2492)
167 Main Street
Hackensack, New Jersey 07601
(201) 853-3030
(201) 584-0297 (Facsimile)

*Attorneys for Appellant Educational
Credit Management Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................iii-vi

CORPORATE DISCLOSURE STATEMENT .......................................................1

I.    STANDARD OF APPELLATE REVIEW AND JURISDICTIONAL
STATEMENT ................................................................................2

II.   STATEMENT OF THE ISSUES .................................................3

III.  STATEMENT OF THE CASE ....................................................3

IV.  STATEMENT OF FACTS ...........................................................5

V.   SUMMARY OF THE ARGUMENT.........................................11

VI.  ARGUMENT ...............................................................................15

        A.   Legislative History of the Dischargeability of
           Student Loans...........................................................15

        B.   The Undue Hardship Standard .........................17

        C.   Rosenberg did not and cannot meet his burden under
           any one of the *Brunner* prongs, let alone all three ..........20

              1. The Bankruptcy Court erred in concluding
                 that Rosenberg satisfied his first *Brunner*
                 prong burden on summary judgment........................21

              2. The Bankruptcy Court erred in concluding
                 that "additional circumstances" exist
                 indicating that Rosenberg's state of affairs is
                 likely to persist for a significant portion
                 of the repayment period for his
                 student loans…………………………………………...23

                 a. The second Brunner prong is
                    intentionally and necessarily a demanding
                    requirement…………………………………...…23

i

b.  The Bankruptcy Court effectively eliminated the second prong of the *Brunner* test…..………...…24

c.  Rosenberg failed to establish any "additional circumstances" required under the second Brunner prong, and ECMC is entitled to judgment as a matter of law …..………..………………….……...26

3.  The Bankruptcy Court erred in concluding that Rosenberg made a good faith effort to repay his ECMC Loan ……………………………...29

a.  Rosenberg's nominal payment history failed to establish he made a good faith effort to repay his loan…………………………….....31

b.  Rosenberg refuses to rehabilitate the ECMC Loan and obtain an affordable payment for his student loan……………..…………………………………..33

c.  Rosenberg failed to demonstrate good faith by maximizing his income…………..………………..36

d.  Rosenberg failed to establish good faith by minimizing expenses………………..………...…38

VI.    CONCLUSION…….. ...................................................................40

Statement of Oral Argument  ...................................................................42

Certificate of Compliance ...................................................................43

## Cases

*Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328
  (3d Cir. 2001) ............................................................................................................. 24

*Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 831 F.2d 395
  (2d Cir. 1987) ............................................................................................................. 19

*Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 46 B.R. 752 (S.D.N.Y. 1985),
  aff'd., 831 F.2d 395 (2d Cir. 1987) ........................................................................... 19

*Brunner v. New York State Higher Educ. Servs. Corp.* (*In re Brunner*), 46 B.R. 752, 756
  (S.D.N.Y. 1985) ........................................................................................................... 2

*Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86-7 (2d Cir. 2000) ................... 16

*Cohen v. De La Cruz*, 523 U.S. 213, 222, 118 S. Ct. 1212, 140 L.Ed.2d 341 (1998) ................. 15

*Easterling v. Collecto, Inc.*, 692 F.3d 229, 231 (2d Cir. 2012) .................................................... 15

*Educ. Credit Mgmt. Corp. v. Curiston*, 351 B.R. 22, 29 (D. Conn. 2006) ................................. 24

*Educ. Credit Mgmt. Corp. v. Davis (In re Davis)*, 373 B.R. 241 (W.D.N.Y. 2007) .................... 23

*Educ. Credit Mgmt. Corp. v. DeGroot*, 339 B.R. 201, 210 (D. Ore. 2006) ................................. 39

*Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*,
  433 F.3d 393 (4th Cir. 2005) ............................................................................... 19, 35

*Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393,
  399 (4th Cir. 2005) ..................................................................................................... 18

*Educ. Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302 (10th Cir. 2004) ............... 19

*Educational Credit Management Corp. v. Jesperson*, 571 F.3d 775, 782-83 (8th Cir. 2009) ..... 36

*Gerhardt v. United States Dept. of Educ. (In re Gerhardt)*, 348 F.3d 89 (5th Cir. 2003) ........... 19

*Grubin v. Sallie Mae Servicing Corp., LP, et al. (In re Grubin)*, 476 B.R. 699
  (Bankr. E.D.N.Y. 2012) ............................................................................................. 35

*Hemar Ins. Co. of Am. v. Cox (In re Cox)*, 338 F.3d 1238 (11th Cir. 2003) ............................. 19

*Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238 (11th Cir. 2003) ........................... 16

*Hlady v. Key Bank N.A.*, 2020 WL 1987775, at *13 (Bankr. E.D.N.Y. Apr. 24, 2020) ............... 24

*Holzer v. Wachovia Servs., Inc. (In re Holzer)*, 33 B.R. 627, 632
  (Bankr. S.D.N.Y. 1983) ......................................................................................... 33, 34

*In re Alderete,* 289 B.R. 410, 418 (Bankr. D.N.M. 2002, *aff'd In re Alderete,*
   412 F.3d 1200 (10th Cir. 2005) ........................................................................ 29

*In re Blackwood Assocs., L.P.,* 153 F.3d 61, 67 (2d Cir. 1998)................................. 2

*In re Brunner*, 46 B.R. 752 (Bankr. S.D.N.Y. 1985) ............................................... 25

*In re Brunner,* 831 F.2d 395, 396 (2d Cir. 1987)..................................................... 17

*In re Cunningham,* No. 04-2636, 2006 WL 1133923, *4 (N.D.W.Va. Apr. 26, 2006)............... 32

*In re Duval*, No. 10-10450 JMP, 2012 WL 1123041 (Bankr. S.D.N.Y. Apr. 3, 2012)............... 20

*In re Elmore*, 230 B.R. 22, 27 (Bankr. D. Conn. 1999)....................................... 29, 37

*In re Gerhardt*, 348 F.3d 89, 92 (5th Cir. 2003) ................................................. 24

*In re Gill,* 326 B.R. 611, 640-41 (Bankr. E.D.Va. 2005)........................................ 32

*In re Jean-Baptiste,* 584 B.R. 574, 587 (Bankr. E.D.N.Y. 2018) ............................. 36

*In re L.K.,* 351 B.R. 45, 52 (Bankr.E.D.N.Y.2006) .............................................. 24

*In re L.K.*, 351 B.R. 45, 55-56 (Bankr. E.D.N.Y. 2009)......................................... 32

*In re Lozada,* 604 B.R. 427, 432 (S.D.N.Y. 2019 ............................................... 17

*In re Mosko,* 515 F.3d 319, 324 (4th Cir. 2008) ................................................. 30

*In re Perkins,* 318 B.R. 300, 312 (M.D.N.C. 2004).............................................. 31

*In re Pincus,* 280 B.R. 303, 318 (Bankr. S.D.N.Y. 2002) ...................................... 36

*In re Pobiner*, 309 B.R. 405, 420 (Bankr. E.D.N.Y. 2004) .................................... 29

*In re Rifino*, 245 F.3d 1083, 1088 (9th Cir. 2001)............................................... 20

*In re Spence,* 541 F.3d 538, 544 (4th Cir. 2008) ............................................... 28

*In re Thoms*, 257 B.R. 144 (Bankr. S.D.N.Y. 2001)............................................ 24

*In re Traversa,* 444 F. App'x 472, 474 (2d Cir. 2011)......................................... 17

*In re Traversa*, 444. App'x 472, 474 (2d Cir. 2011) ............................................ 2

*Kelly v. Sallie Mae Serv. (In re Kelly,* 351 B.R. 45 (Bankr. E.D.N.Y. 2006)............... 35

*Matter of Thomas,* 931 F.3d 449, 454 (5th Cir. 2019).......................................... 18

*Miller v. Sallie Mae, Inc., et al.*, 409 B.R. 299, 321 (Bankr. E.D. Pa. 2009) ............... 39

*Motor v. Great American Federal Savings and Loan Association*, 64 B.R. 317
(Bankr. W.D. Pa. 1986) ......................................................................... 39

*O'Hearn v. Educ. Credit Mgmt. Corp.,* 339 F.3d 559, 564 (7th Cir. 2003) ................................. 30

*Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005) ........................ 19

*Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005) ................ 28

*Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298
(3d Cir. 1995)................................................................................................................ 19, 24

*Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. 405
(Bankr. E.D.N.Y. 2004) ....................................................................................... 30, 35

*Tingling v. U.S. Dep't of Educ.,* 611 B.R. 710, 724 (E.D.N.Y. 2020).......................................... 20

*Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch)*, 409 F.3d 677 (6th Cir. 2005) .......... 35

*Traversa v. Educ. Credit Mgmt. Corp. (In re Traversa)*, 444 F. App'x 472 (2d Cir. 2011) ........ 20

*United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108 (9th Cir. 1998) ........................ 19

*Wieckiewicz v. Educ. Credit Mgmt. Corp.*, 443 Fed Appx. 449, 451 (11th Cir. 2011) ............... 35

*Williams v. N.Y. State Higher Educ. Servs. Corp. (In re Williams),* 296 B.R. 298, 302
(S.D.N.Y. 2003), *aff'd,* 84 F. App'x 158 (2d Cir. 2004) .......................................... 18

*Williams v. New York Higher Educ. Servs. Corp.* (*In re Williams*), 296 B.R. 298, 302
(S.D.N.Y. 2003)................................................................................................................ 2

**Statutes**

11 U.S.C. 523(a)(8)............................................................................................................ 15, 16

20 U.S.C. 1001.................................................................................................................. 16

28 U.S.C. § 1334(b) ......................................................................................................... 2

28 U.S.C. § 157(b)(2)(I) .................................................................................................. 2

28 U.S.C. § 158(a)(1)........................................................................................................ 2

42 U.S.C. § 9902(2) ......................................................................................................... 10

**Rules**

Fed R. Bankr. P. 8013 ................................................................................................ 2

Federal Rule Bankruptcy Procedure 8014 ................................................................ 2

Federal Rule of Bankruptcy Procedure 8002(a)(1) .................................................. 2

Federal Rule of Bankruptcy Procedure 8012 ........................................................... 1

**Other Authorities**

Bankruptcy Abuse and Consumer Protection Act of 2005, Pub. L. 109-8, § 220,
     119 Stat. 59 ...................................................................................................... 17

Education Amendments of 1976, Pub. L. No. 94-482, § 127(a), 90 Stat. 2141 ........... 16

Federal Debt Collection Procedures Act of 1990, Pub. L. No. 101-647, § 3621(2),
     104 Stat. 4965 .................................................................................................. 16

Higher Education Amendments of 1998, Pub. L. No. 105-244, § 971, 112 Stat. 1837 .............. 17

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Bankruptcy Procedure 8012, Defendant-Appellant Educational Credit Management Corporation ("ECMC") discloses that it is a nongovernmental nonprofit corporation that is 100 percent owned by ECMC Group, Incorporated, a Delaware Corporation.  ECMC further states that no publicly held company owns 10 percent or more of ECMC's stock.

## I.     STANDARD OF APPELLATE REVIEW AND JURISDICTIONAL STATEMENT

The district court reviews the bankruptcy court's findings of fact for clear error and reviews the bankruptcy court's legal conclusions *de novo*. *See* Fed R. Bankr. P. 8013; *Brunner v. New York State Higher Educ. Servs. Corp.* (*In re Brunner*), 46 B.R. 752, 756 (S.D.N.Y. 1985), *aff'd* 831 F.2d 395 (2d Cir. 1987); *see also Williams v. New York Higher Educ. Servs. Corp.* (*In re Williams*), 296 B.R. 298, 302 (S.D.N.Y. 2003), *aff'd In re Williams,* 84 Fed. Appx. 472 (2d Cir 2004). A bankruptcy court's findings of fact will not be disturbed unless clearly erroneous. *See In re Traversa*, 444. App'x 472, 474 (2d Cir. 2011), *cert. denied,* 568 U.S. 817 (2012).  Sitting as an appellate court, this court reviews the grant of a summary judgment motion *de novo*, taking all factual inferences in favor of the non-moving party.  *In re Blackwood Assocs., L.P.,* 153 F.3d 61, 67 (2d Cir. 1998).

Pursuant to Federal Rule Bankruptcy Procedure 8014, ECMC states that: (A) the bankruptcy court's jurisdiction was based on 11 U.S.C. § 523(a)(8), 28 U.S.C. § 1334(b), and 28 U.S.C. § 157(b)(2)(I); (B) the district court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1); (C) ECMC filed its Notice of Appeal with the bankruptcy court in a timely manner on January 17, 2020, pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1); and (D) ECMC is appealing from a final judgment, order, or decree, pursuant to 28 U.S.C. § 158(a)(1).

## II.   <u>STATEMENT OF THE ISSUES</u>

Plaintiff-Appellee Kevin Jared Rosenberg ("Rosenberg") is a smart, healthy, well-educated, relatively young man with a law degree from a well-respected law school, who abandoned a career in the legal profession because he did not find the work interesting enough.  He is unmarried, has no dependents, and has minimal financial obligations other than his taxpayer-backed student loan debt, which he borrowed to obtain his law degree.  After more than a decade of making only nominal payments toward his student loan obligation, and refusing an affordable payment, Rosenberg instead sought to discharge his student loan debt, claiming repayment would cause him an undue hardship.   The bankruptcy court agreed and held, on summary judgment and *as a matter of law*, that repayment of his student loans constituted an undue hardship. The issue before this Court is whether the bankruptcy court correctly applied the three-part *Brunner* test when it granted Rosenberg's motion for summary judgment, denied ECMC's cross-motion for summary judgment, and discharged his student loan debt as an undue hardship under 11 U.S.C. § 523(a)(8).

## III.   <u>STATEMENT OF THE CASE</u>

Rosenberg filed for relief under Chapter 7 of the Bankruptcy Code on March 12, 2018, with one aim: to discharge his student loans in bankruptcy.  His student loans, as a component of his debt, accounted for 99.87% of his total unsecured debts.

(*See* ECMC's Appendix (hereinafter referred to as "E.A.") 187-192, 325.) Rosenberg received a general discharge of the 0.13% of his other unsecured debt on July 26, 2018.  Rosenberg then filed an adversary proceeding seeking a discharge of his student loans, claiming repayment would cause an undue hardship pursuant to 11 U.S.C. § 523(a)(8).

On August 27, 2019, Rosenberg filed a motion for summary judgment in the adversary proceeding.  On October 8, 2019, ECMC filed opposition to Rosenberg's motion and a cross-motion for summary judgment (the "Cross-Motion").   On January 7, 2020, the bankruptcy court issued a Memorandum Decision and Order granting Rosenberg's motion for summary judgment, discharging his student loan held by ECMC (the "ECMC Loan"), and denying the Cross-Motion.  Thereafter, on January 24, 2020, the bankruptcy court entered an order declaring that the ECMC Loan imposes an undue hardship on Rosenberg and is discharged.

This appeal followed.  ECMC timely filed its Notice of Appeal seeking reversal of the bankruptcy court's decision granting Rosenberg's motion for summary judgment and denying the Cross-Motion.  By order dated March 4, 2020, this Court granted ECMC's motion for leave to appeal the interlocutory portion of the bankruptcy court's order, i.e., the denial of the Cross-Motion.

## IV.   **STATEMENT OF FACTS**

1.     Rosenberg is a 45-year-old, healthy individual, unmarried, with no dependents.  (E.A. 322, ¶¶ 1-2.)

2.     Rosenberg has lived in a three-bedroom single-family house by himself in Beacon, New York, since May 2016.  (E.A. 325, ¶ 25.)  Rosenberg pays $2,150 per month in rent for his house.  (E.A. 325, ¶ 26.)  Rosenberg moved to Beacon from an apartment in Park Slope, New York, where he paid rent of $1,450 per month. (E.A. 325, ¶ 27.)

4.     Rosenberg holds a Bachelor of Arts degree from the University of Arizona and a Juris Doctorate degree from Cardozo Law School at Yeshiva University.  (E.A. 322, ¶¶ 3, 5.)  The ECMC Loan, which is backed by United States taxpayers, was used to pay Rosenberg's tuition and board at law school.  (E.A. 322, ¶ 6.)

5.     The ECMC Loan was a consolidation loan that was disbursed on April 22, 2005 in the original principal amount of $116,464.75.  (E.A. 351, ¶ 7.)  The original lender of the ECMC Loan was Citibank and the original guarantor was New York State Higher Education Services Corporation ("NYSHESC").  (E.A. 351, ¶ 7.) When Rosenberg defaulted on the ECMC Loan, NYSHESC, as guarantor, paid a default claim to the lender. (E.A. 352, ¶ 9.)  When Rosenberg filed his bankruptcy petition, NYSHESC assigned all right, title, and interest in the ECMC Loan to

ECMC.  (E.A. 352, ¶ 10.)  The outstanding balance of the ECMC Loan at the time of the bankruptcy was $221,385.49. (E.A. 352, ¶ 12.)

6.     Rosenberg is licensed to practice law in the states of New York and New Jersey, currently in "retired" status.  (E.A. 323, ¶¶ 7, 12.)

7.     After he passed the bar examination, Rosenberg worked as an associate attorney at the law firm of Fisher Porter & Thomas in Englewood Cliffs, New Jersey, for approximately 2 ½ months, at a starting salary of between $55,000 and $60,000 per year.  (E.A. 323, ¶ 8.)

8.     Rosenberg disliked working in an office and did not find the work very interesting, so after 2 ½ months, he stopped working at Fisher Porter & Thomas. (E.A. 323, ¶ 9.)  In his Complaint, Rosenberg specifically stated that he "practiced law for 2.5 months and realized that a legal career was not for him."  (E.A. 41, ¶ 11.)

9.     Rosenberg nonetheless continued to take on work as a contract attorney, doing document review-type projects, which paid him more money than his permanent position at the law firm. (E.A. 323, ¶¶ 10, 11.)  As a contract attorney, Rosenberg demonstrated annual earnings between $70,000 and $80,000. (E.A. 323, ¶ 11.)

10.     Rosenberg eventually stopped doing contract attorney work in 2008 and did not further pursue a career of any kind in the legal industry.  (E.A. 323, ¶ 14.)

11.     Instead, Rosenberg struck out on his own in January 2009 and started a company called "Gear to Go Outfitters," a business that sold and rented outdoor equipment, and provided guide services for outdoor adventure trips. (E.A. 324, ¶ 17.)

12.     Rosenberg's earnings from Gear to Go Outfitters "[r]anged from whatever profit was made to a maximum of $100,000 per year." (E.A. 324, ¶ 18.)

13.     Rosenberg operated Gear to Go Outfitters for almost 10 years before closing the business. (E.A. 324, ¶ 19.)

14.     Rosenberg started a new company in October or November 2018 offering similar services, such as guided tours for international travel, including hikes and horseback riding. (E.A. 103:21-25, 104:1-5.)

15.     Rosenberg's most current stated income in the record is $24,050 per year. (E.A. 304, ¶ 6(a)g.)

16.     While Rosenberg has chosen a career path in the outdoor adventure guide business, the record establishes that he has more lucrative employment options, both within and outside of the legal profession. Based on Rosenberg's past employment, experience in the United States Navy, and qualifications, the record contained numerous employment opportunities exist for Rosenberg. Based on a Vocational Evaluation Report, examples of available jobs included: (i) a legal assistant or paralegal, at salaries ranging from $42,000 to $120,000; (ii) a retail store

manager, at salaries ranging from $45,000 to $100,000 per year; and (iii) customer

service or entry level sales positions, at salaries ranging from $36,000 to $50,000

per year.  (E.A. 217-291.)

17.    Rosenberg's employment history shows that he is finicky about what

he does for a living, and where he is willing to work.  He is not interested in obtaining

a job in the legal field.  Nor is he willing to commute into New York City for work,

even though the Metro-North Railroad stops in Beacon, New York, where he lives.

(E.A. 324, ¶ 16.)

18.    Without a doubt, the taxpayer has the most to lose by Rosenberg's

bankruptcy filings.  In fact, other than student loans, the only debts listed in his

bankruptcy schedules were an $11,934.30 debt to the Internal Revenue Service and

a $400 debt to the New York State Department of Taxation and Finance.  (E.A.

187, 324, ¶ 23.)  The rest of Rosenberg's debt is student loans totaling

$370,353.22, or 99.87% of his debt.  (E.A. 189-190.)  The ECMC Loan, which

represents the taxpayer-backed portion of his student loan debt, constituted

$221,385.49 of the total student loan debt.[1]

19.    Rosenberg's payment history on the ECMC Loan fails to establish

even a modicum of gratitude to the taxpayers.  Over the 12 ½ year life of the loan,

---

[1] The remaining balance of Rosenberg's student loan debt was held by a private lender, which
voluntarily discharged the debt and is no longer part of this case.  (E.A. 34, Dkt. No. 45.)

Rosenberg paid a mere $2,983.90. (E.A. 352, ¶ 11.) This averaged less than $20 per month over the life of the ECMC Loan.

20.     The lack of gratitude extends into the future, in that Rosenberg refuses to take advantage of federal administrative programs that would cap his loan payments based on his current income. Although the ECMC Loan is currently in default, the applicable loan program provides under federal law for Rosenberg to rehabilitate his federal student loan back out of defaulted status.  34 C.F.R. § 682.405.   He could rehabilitate his loan simply by making nine affordable monthly payments during a ten-month period based on the formula set forth in federal regulations[2]. 34 C.F.R. § 682.405(b)(1)(iii); E.A. 352, ¶ 13.

21.     Upon successful rehabilitation of the loan, Appellee would be entitled to choose any statutorily available repayment plan.  34 C.F.R. § 682.405(b)(4)(i). He could choose to repay a fully amortized payment over the course of 30 years, or he could choose the Income Based Repayment Program ("IBR"). *See* 34 C.F.R. § 682.215. Because the monthly IBR payment is calculated as a percentage of a borrower's income rather than on the loan balance and interest rate, if the borrower's income drops, the monthly payment is reduced accordingly. [3]   The repayment period

---

[2] The rehabilitation monthly payment amount is 15 percent of the borrower's adjusted gross income that exceeds 150 percent of the poverty guideline applicable to his family size, divided by 12, with a minimum payment of $5. Based on Rosenberg's stated income of $24,050 per year, his rehabilitation payment would be, at most, $61 per month.

[3] The IBR compares a borrowers' income with 150% of the federal poverty level for their family size. Borrowers who earn less than 150% of the poverty level for their family size will have a $0

under the IBR is 25 years, at which time the remaining balance is cancelled.  34

C.F.R. § 682.215(f).  Based on his stated annual income of $24,050, his monthly

IBR payment would be $61.  34 C.F.R. § 682.215(b)(1), 42 U.S.C. § 9902(2).

22.    Rosenberg could also consolidate his loan into a William D. Ford

Direct (the "Ford Program") loan and be eligible for several additional income-

driven repayment plans, including the Revised Pay As You Earn ("REPAYE")

Plan.  *See* 34 C.F.R. § 685.209(c)[4].   After 25 years of repayment under this

program, any remaining balance is cancelled.   *See* 34 C.F.R. § 685.209(c)(5)(ii).

In this case, based on Appellee's stated annual income of $24,050, Appellee's

REPAYE payment would be $41 per month.  *See* 34 C.F.R. § 685.209(c)(2)(i), 42

U.S.C. § 9902(2).

23.    But Rosenberg is not interested in an affordable monthly payment and

making a good faith effort to repay his student loans.  Rather, he simply wants his

---

IBR payment but still be considered current on their federal student loan debt.  The IBR payment
is capped at 15% of the amount by which the borrower's Adjusted Gross income ("AGI")
exceeds 150% of the applicable poverty level for the borrower's family size.  34 C.F.R. §
682.215(b)(1).
[4] The monthly payment under the REPAYE Plan is 10% of the borrower's discretionary income.
In addition to the affordable monthly payment, REPAYE also allows for a generous interest
subsidy if a borrower's calculated monthly payment is insufficient to cover all accruing interest
(negative amortization). 34 C.F.R. § 685.209(c)(iii).

student loans gone and taxpayers to foot the bill for his decision to pursue an extensive education.[5]

## V.   SUMMARY OF THE ARGUMENT

No one likes student loan debt.  But without the taxpayer-backed student loan program, many Americans would never realize their individual aspirations, and, in turn, our country could never fully realize its greatness. In fact, it is fair to say that the taxpayer-backed student loan program offers one of the largest springboards for the opportunity of prosperity.

Borrowers like Rosenberg put the availability of this opportunity to future generations of students in grave jeopardy. He made the decision to pursue higher education.  He chose his field of study. He chose his educational institutions. He chose how much to borrow from the taxpayers. Likewise, for more than a decade, he chose not to repay much of anything toward the debt he amassed—*even when he clearly had the means to do so*. Instead, he chose to abandon his career in law and the earning potential he had just begun to embark on.  He refuses generous income based repayment opportunities and the very doable pathway they pave toward addressing his student loan debt. Instead, he chose to sue his student loan creditor and discharge his taxpayer-backed student loan debt entirely.  He is smart, healthy,

---

[5] Rosenberg testified in his deposition that he is unwilling to consider any income-driven repayment plan, even if his payment were as low as $0 per month.  (E.A. 325, ¶ 30; 110:18-25, 1-13.)

well-educated (thanks to the taxpayer-backed loan) and is capable of repaying his student loan debt. He'd just rather not.

Again, no one likes student loan debt.  However, Rosenberg could be the poster child to demonstrate precisely the reason that student loan discharge is set at a higher standard than most other debts.  Congress enacted the undue hardship provision for truly deserving borrowers that face hardship beyond the normal financial challenges that face most all bankruptcy filers.  The Second Circuit established the decision that most federal courts use to decipher between the truly desperate student loan borrower who is suffering from an undue hardship, and those who are not.  By this well-established standard, Rosenberg falls squarely into the latter category.

The bankruptcy court found that because Rosenberg's loans were defaulted, the amount that the court must consider for repayment was not an amortized monthly payment but the *entire amount of the debt*, which was $221,385.49. That unprecedented, twisted analysis of the *Brunner* test incentivizes participants to borrow recklessly and excessively from the taxpayers, default on that loan, and then simply walk away from the taxpayer-backed debt based almost exclusively on the curable default status of the loan.

The record before the bankruptcy court demonstrated that Rosenberg's undue hardship case failed miserably under the controlling *Brunner* test, or any real test,

for that matter.  Still, the bankruptcy court, in a result-oriented decision that sought to rewrite more than three (3) decades of case law interpreting *Brunner*, discharged Rosenberg's student loan debt on summary judgment.

First, the bankruptcy court concluded that Rosenberg satisfied the first prong of the *Brunner* test – i.e., that he cannot maintain a minimal standard of living for himself and his dependents (of which he has none) if he is compelled to repay the loan.  In its first prong analysis, the bankruptcy court erroneously concluded that because Rosenberg's loan was in default, the entire $221,385.49 balance of the loan was his **only** "payment" available for analysis.  This conclusion ignores critical aspects of the student loan program and completely guts the first prong of the *Brunner* test because virtually no defaulted borrower in bankruptcy will be able to afford a "payment" of the entire balance of their loan.

Second, the bankruptcy court concluded in error that Rosenberg satisfied the second *Brunner* prong, which requires the debtor to demonstrate that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period for the student loan.  In reaching this conclusion, the bankruptcy court again relied solely on the current default status of the loan and held that, as such, there was no "repayment period" because the entire balance was immediately due and owing.  This conclusion ignores the future-looking portion of the second prong and essentially writes the second prong out of the

13

*Brunner* test, as it again look only the current default status of the loan – a standard that is no test at all, as virtually no debtor in bankruptcy will be able to immediately pay the entire balance due and owing on his student loans.

Third, the bankruptcy court's conclusion that Rosenberg satisfied the third, "good faith" prong of the *Brunner* test ignored all of the factors that precedent calls for within the good faith analysis.  The borrower has minimized rather than maximized his income: he voluntarily left more lucrative employment, voluntarily exited a more lucrative field, refuses to seek available higher paying employment outside of law, refuses to seek employment in the more lucrative legal field for which he was trained, and has self-limited his commute and the geographic range in which he is willing to pursue employment. He has not minimized his expenses; most notably, he has inexplicably increased, rather than decreased, his housing expense. He has made only nominal payments on his student loan over the course of 12 ½ years, even during his strongest earnings periods. Finally, he has refused rehabilitation and income based repayment of his student loan.  Rosenberg has made virtually no effort to repay his student loan, let alone a good faith effort.  While the record contains no evidence of hardship, to the extent there is any present, it is entirely of Rosenberg's own making.

The bankruptcy court failed to apply any real undue hardship standard. *Brunner* is the law of the Second Circuit and, after many years of consideration and

14

evaluation, the law of most of the rest of the country, as well.  The bankruptcy court erred in its application of the facts of this case to the *Brunner* test for undue hardship. Rosenberg is not entitled to an undue hardship discharge of his taxpayer-backed student loan debt.

## VI.   <u>ARGUMENT</u>

### A.   <u>Legislative History of the Dischargeability of Student Loans.</u>

Although a general purpose of the Bankruptcy Code is to provide a procedure where honest but insolvent debtors can obtain a "fresh start," the Bankruptcy Code also "limits the opportunity for a completely unencumbered beginning to the…debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991).  Section 523(a)(8) of the Bankruptcy Code provides that a student loan debt is not dischargeable unless "excepting such debt from discharge…will impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. 523(a)(8). "Student loans are presumptively nondischargeable in bankruptcy." *Easterling v. Collecto, Inc.,* 692 F.3d 229, 231 (2d Cir. 2012).  By excepting student loans from discharge, Congress made the policy choice that repaying taxpayers trumped the "fresh start" policy.  *See Cohen v. De La Cruz*, 523 U.S. 213, 222, 118 S. Ct. 1212, 140 L.Ed.2d 341 (1998) (citing *Grogan*, 498 U.S. at 287) (exceptions to discharge in § 523(a) reflect a conclusion on the part of Congress that a creditor's interest in payment outweigh the debtor's fresh start).

Although the Bankruptcy Code does not define the term "undue hardship," Congress has consistently limited the ability of debtors to discharge their student loan debt through bankruptcy.  In 1976, Congress added a provision to the Higher Education Act of 1965, 20 U.S.C. 1001 *et seq.*, that barred the discharge of certain educational loans unless either (a) they had been in repayment for over five years (exclusive of any suspension in repayment), or (b) payment would impose an undue hardship on the debtor or his dependents.  Education Amendments of 1976, Pub. L. No. 94-482, § 127(a), 90 Stat. 2141.  Since then, Congress has intentionally and progressively made it more difficult for student loan obligations to be discharged in bankruptcy.  *See Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86-7 (2d Cir. 2000); *Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1243 (11th Cir. 2003). "Congress enacted 11 U.S.C. § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers." *Renshaw* at 87.  "Congress recognized that this is an instance where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start." *Id.*

In 1990, Congress extended the five-year requirement to seven years.  Federal Debt Collection Procedures Act of 1990, Pub. L. No. 101-647, § 3621(2), 104 Stat. 4965; 11 U.S.C. 523(a)(8) (1994).  In 1998, the seven-year provision was eliminated,

16

allowing discharge of loans only in circumstances of a showing of undue hardship. Higher Education Amendments of 1998, Pub. L. No. 105-244, § 971, 112 Stat. 1837, for bankruptcies filed after October 7, 1998.  Most recently, in 2005, Congress expanded the types of student loans that are subject to Section 523(a)(8) and are therefore not dischargeable absent an undue hardship. Bankruptcy Abuse and Consumer Protection Act of 2005, Pub. L. 109-8, § 220, 119 Stat. 59.

Against this backdrop, it is clear that Congress made the policy choice that federally-insured student aid was only to be discharged in exceptional circumstances.  *See In re Brunner,* 831 F.2d 395, 396 (2d Cir. 1987); *In re Traversa,* 444 F. App'x 472, 474 (2d Cir. 2011) ("Because § 523(a)(8) exhibits a 'clear congressional intent ... to make the discharge of student loans more difficult than that of other nonexcepted debt,' we have required debtors seeking to discharge student loans to provide evidence 'not only of current inability to pay but also of additional, exceptional circumstances, strongly suggestive of continuing inability to repay over an extended period of time.'")(citing *Brunner,* 831 F.2d at 396); *In re Lozada,* 604 B.R. 427, 432 (S.D.N.Y. 2019) (citing *In re Cox,* 338 F.3d at 1243 ("Considering the evolution of § 523(a)(8), it is clear that Congress intended to make it difficult for debtors to obtain a discharge of their student loan indebtedness.").

**B.**     **The Undue Hardship Standard.**

17

Under the Bankruptcy Code, student loans cannot be discharged in bankruptcy unless the debtor establishes that having to repay the loans would "impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. § 523(a)(8). Because Congress selected the word 'undue,' the required hardship under § 523 must be more than the usual hardship that accompanies bankruptcy.  Inability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have an undue hardship. *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 399 (4th Cir. 2005); *see also Williams v. N.Y. State Higher Educ. Servs. Corp. (In re Williams),* 296 B.R. 298, 302 (S.D.N.Y. 2003), *aff'd,* 84 F. App'x 158 (2d Cir. 2004) ("Because any debtor in bankruptcy usually has significant financial problems, a finding of undue hardship will not be based simply on the debtor's difficulty making payments."); *Matter of Thomas,* 931 F.3d 449, 454 (5th Cir. 2019) ("The plain meaning of the words chosen by Congress is that student loans are not to be discharged unless requiring repayment would impose intolerable difficulties.").

While Congress did not explicitly define undue hardship in section 523(a)(8), courts have examined the legislative purpose surrounding the nondischargeability of student loans in order to devise a method for analyzing complaints brought under this section.  The *Brunner* district court in this district expressed the high standard required before a student loan can be discharged

> Through § 523(a)(8), [the government] commits the student to repayment regardless of his subsequent

18

> economic circumstances. In return for giving aid to individuals who represent poor credit risks, it strips these individuals of the refuge of bankruptcy in all but extreme circumstances. This is a bargain each borrower strikes with the government. Like all bargains, it entails risks. It is for each student individually to decide whether the risks of future hardship outweigh the benefit of a deferred-payment education.

*In re Brunner*, 46 B.R. at 756 (S.D.N.Y. 1985), aff'd., 831 F.2d 395 (2d Cir. 1987).

In 1987, the Second Circuit adopted the *Brunner* district court's standard for "undue hardship." *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner),* 831 F.2d 395 (2d Cir. 1987) (per curiam).  Under the *Brunner* test, a debtor claiming "undue hardship" must demonstrate:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Ibid*, at 396.  "Section 523(a)(8) exhibits a 'clear congressional intent…to make the discharge of student loans more difficult than that of other nonexcepted debt…'" *Id.*  Over the next twenty years, seven other circuits followed suit, adopting *Brunner* as the preferred rubric.[6]  Along the way, a breadth of case law emerged and

---

[6] *See Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 305 (3d Cir. 1995); *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 400 (4th Cir. 2005); *Gerhardt v. United States Dept. of Educ. (In re Gerhardt)*, 348 F.3d 89 (5th Cir. 2003); *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382 (6th Cir. 2005); *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1112 (9th Cir. 1998); *Educ. Credit Mgmt. Corp.*

recognition of "the very heavy burden that must be met in proving undue hardship in the context of seeking a discharge of student loan debt." *Traversa,* 444 F. App'x at 474 (quoting *Brunner*, 831 F.2d at 396); *see also Williams,* 296 B.R. at 302 ("A debtor carries a heavy burden when she seeks to establish an undue hardship under [S]ection 523(a)(8).")). "The undue hardship must be truly severe." *Williams,* 296 B.R. at 302.

A debtor seeking to discharge his federal student loan(s) is required to satisfy all three elements of the *Brunner* test. *Traversa*, 444 F. App'x at 474.  The burden of proving undue hardship is on the debtor and, "[i]f the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'" *In re Rifino*, 245 F.3d 1083, 1088 (9th Cir. 2001) (quoting *Pa. Higher Educ. Asstc. Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995)), *see also Williams,* 296 B.R. at 302, *Tingling v. U.S. Dep't of Educ.,* 611 B.R. 710, 724 (E.D.N.Y. 2020).  Specifically, it is incumbent upon the debtor to present evidence of facts supporting each element of the *Brunner* test by a preponderance of the evidence. *Rifino*, 245 F.3d at 1088. Here, in the face of overwhelming evidence that Rosenberg did not prove even one of the three *Brunner* prongs, the bankruptcy court concluded that Rosenberg satisfied his heavy burden

---

*v. Polleys (In re Polleys)*, 356 F.3d 1302, 1309 (10th Cir. 2004); *Hemar Ins. Co. of Am. v. Cox (In re Cox)*, 338 B.R. 1238, 1241 (11th Cir. 2003).

of meeting all three (3) prongs and granted Rosenberg summary judgment, while denying ECMC's Cross-Motion.

**C.    Rosenberg did not and cannot meet his burden under any one of the _Brunner_ prongs, let alone all three.**

   **1.  The Bankruptcy Court erred in concluding that Rosenberg satisfied his first _Brunner_ prong burden on summary judgment.**

The first prong of the _Brunner_ test requires a debtor to prove that he cannot, based on current income and expenses, maintain a minimal standard of living if forced to repay the loan. _Brunner,_ 831 F.2d at 396.

The bankruptcy court's analysis under the first _Brunner_ prong was incomplete. Accordingly, the court erred in its application of the facts to _Brunner's_ first prong. The bankruptcy court concluded that because Rosenberg's loan was in default, the entire $221,385.49 balance of the loan was his "payment" for purposes of the first _Brunner_ prong. (E.A. 26.) The bankruptcy court held that "[Rosenberg] has successfully proven that he cannot immediately pay his Student Loan in full on his current income." _Id._ Despite thousands of student loan undue hardship decisions throughout the country, ECMC has been unable to locate a single case that interprets _Brunner_ in a way such that the debtor need only prove that his loan is in default so he cannot immediately pay the entire balance of his loan to satisfy the first _Brunner_ prong. Such an interpretation would effectively eliminate the first prong for all debtors who have defaulted on their student loan

because virtually no debtor in bankruptcy would be able to immediately pay off the entire balance of their student loan.

Moreover, the same federal student loan regulations that describe default, also provide solutions. The bankruptcy court's interpretation ignores the fact that a monthly payment is readily available for a debtor who has defaulted on his student loan. In this case, Rosenberg is immediately legally eligible to rehabilitate his loan with a fixed payment under federal law, and once completed, would be eligible for multiple repayment options. *See* 34 C.F.R. §§ 682.405; 682.215; 685.209. Rosenberg is also eligible, as a matter of law, for various income-driven repayment options. *See generally* 34 C.F.R. 682.215, 34 C.F.R. § 685.209. The bankruptcy court disregarded these regulatory options as "not currently before the court" and "hypothetical." (E.A. 26.) However, there is nothing hypothetical about these regulatory-proscribed options, as Rosenberg is entitled to avail himself of them as a matter of law.

The bankruptcy court erred in finding that Rosenberg's monthly payment was the entire balance of his loan. Accordingly, the court's findings are incomplete as to whether the record, as it existed on summary judgment, was sufficient for a determination as a matter of law on the first *Brunner* prong. However, a remand on prong one is unnecessary because the record is clear that Rosenberg cannot meet his burden of proof on the second and third *Brunner* prongs, as discussed below.

## 2. The Bankruptcy Court erred in concluding that "additional circumstances" exist indicating that Rosenberg's state of affairs is likely to persist for a significant portion of the repayment period for his student loans.

The second prong of the *Brunner* test requires a debtor to demonstrate that additional circumstances exist indicating that his state of affairs is likely to persist for a significant portion of the repayment period. *Brunner*, 831 F.2d at 396.

### a. The second Brunner prong is intentionally and necessarily a demanding requirement.

The second prong has been referred to as, "the heart of the *Brunner* test." *Frushour,* 433 F.3d at 401. This factor "most clearly reflects the congressional imperative that the debtor's hardship must be more than the normal hardship that accompanies any bankruptcy." *Id.* The "additional circumstances requirement" recognizes that virtually every debtor in bankruptcy is strapped financially and that there must be something more than mere economic distress to justify a finding of undue hardship. *See, e.g., Educ. Credit Mgmt. Corp. v. Davis (In re Davis),* 373 B.R. 241, 250 (W.D.N.Y. 2007) ("The type of additional circumstances contemplated by *Brunner* are well beyond those hardships that normally accompany any bankruptcy.").

23

The Second Circuit requires debtors seeking to discharge their student loans to provide evidence "not only of current inability to pay but also of additional, *exceptional circumstances*, strongly suggestive of continuing inability to repay over an extended period of time." *In re Traversa* 444 Fed. Appx. at 474 (emphasis added) (citing *Brunner,* 831 F.2d at 396)).  Courts within the Second Circuit and beyond hold that the second *Brunner* prong is a demanding requirement. *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3d Cir. 2001); *Frushour,* 433 F.3d at 401; *Faish,* 72 F.3d at 305;  *In re Gerhardt*, 348 F.3d 89, 92 (5th Cir. 2003); *Educ. Credit Mgmt. Corp. v. Curiston*, 351 B.R. 22, 29 (D. Conn. 2006) ("[T]he additional circumstances element [of the *Brunner* test] sets a high standard of proof."); *In re L.K.,* 351 B.R. 45, 52 (Bankr.E.D.N.Y.2006) ("Establishing undue hardship is a 'heavy burden' for any debtor.").

Courts hold that "additional circumstances" sufficient to establish the second *Brunner* prong include where a debtor has experienced severe illness, has developed a disability, or has become responsible for a large number of dependents.  *Brunner,* 46 B.R. at 755; *see also Tingling,* 611 B.R. at 726; *In re Thoms*, 257 B.R. 144, 149 (Bankr. S.D.N.Y. 2001); *Hlady v. Key Bank N.A.,* 2020 WL 1987775, at *13 (Bankr. E.D.N.Y. Apr. 24, 2020) (citing *King v. Vt. Student Assistance Corp. (In re King),* 368 B.R. 358, 370 (Bankr. D. Vt. 2007)).

> **b.  The Bankruptcy Court effectively eliminated the second prong of the *Brunner* test.**

24

Given the backdrop of precedent, the bankruptcy court's analysis on the second prong is astonishingly brief and completely unsupported by fact or law. The bankruptcy court based its second prong ruling entirely on the premise that because Rosenberg had defaulted on his student loan and the loan was accelerated, "[Rosenberg's] circumstances will certainly exist for the remainder of the repayment period as the repayment period has ended and the loan is due and payable in the full amount." (E.A. 27.) That conclusion was in error.

Despite volumes of pertinent undue hardship case law, ECMC is aware of no case in the country that has held there is no repayment period on defaulted loans for purposes of analysis of the second *Brunner* prong. If that were the case, every defaulted borrower would satisfy the second prong. Such a test would effectively eliminate the second prong from the *Brunner* test and would encourage borrowers to be as irresponsible as possible in repaying their student loans. If courts were to accept the bankruptcy court's analysis, virtually every debtor of a defaulted loan would automatically satisfy the first and second prongs of the *Brunner* test.

Moreover, the bankruptcy court's analysis completely misses the core of the second prong. It is not enough for a debtor to demonstrate that he has experienced current financial hardships, but rather, she must show "a total incapacity…in the future to pay her debts for reasons not within [her] control." *Brunner,* 46 B.R. at 758; *In re Lozada,* 604 B.R. at 436 (requiring that "…the inability to pay is

because of factors beyond the debtor's control")).  The bankruptcy court's conclusion that no repayment period existed on Rosenberg's loan due to the default status of his student loan overlooks the regulatory framework of the student loan program.  Federal law allows Rosenberg to rehabilitate the default and otherwise pay under various repayment options 34 C.F.R. § 682.405.[7]  Upon successful rehabilitation of the loan, Rosenberg would then be entitled to choose any statutorily available repayment term for that loan type.  34 C.F.R. § 682.405(b)(4)(i).[8]

Accordingly, the sole factor relied upon by the bankruptcy court as an ongoing additional circumstance preventing repayment is not a roadblock to repayment at all.  Any ongoing hindrance to repayment is completely in Rosenberg's control, as his circumstance is easily overcome by remedies available to Rosenberg as a matter of law, right in the regulations governing his loan.

> **c. Rosenberg failed to establish any "additional circumstances" required under the second Brunner prong, and ECMC is entitled to judgment as a matter of law.**

---

[7] Appellee could rehabilitate his loan by making nine affordable monthly payments during a ten-month period under a formula set forth in federal regulations.  34 C.F.R. § 682.405(b)(1)(iii), E.A. 352.

[8] Rosenberg could also enroll in an income-driven repayment program, which would provide a 25-year repayment plan followed by cancellation of any remaining balance. *See* 34 C.F.R. § 682.215(f); 34 C.F.R. § 685.209(c)(5)(ii).

Rosenberg fell well short of offering additional circumstances meeting the requirements of the second prong.  The Second Circuit has directed that, "In determining whether a debtor has met the second *Brunner* factor, courts consider the debtor's job skills, age, health, the number of working years remaining, and whether the debtor has maximized her income potential."  *Tingling,* 611 B.R. at 726 (citing *In re Traversa,* 444 F. App'x at 474-75).

None of these factors cut towards discharge.  Rosenberg is relatively young, with many working years ahead of him; in good health, with no dependents; and, based on his education and experience, is highly employable in a number of areas. (E.A. 217-291.)

Rosenberg refuses to consider any employment in the legal field, or outside of the legal field in areas where he could make more money than he makes in his chosen profession of being a tour guide. The uncontroverted evidence demonstrates that, based on his education and experience, Rosenberg qualifies for higher-paying work.  (E.A. 217-291.)  In analyzing prong two, courts consider a debtor's "potential for increased career and financial opportunities."  *Hlady* at * 13 (citing *Shenk v. U.S. Dept. of Educ. (In re Shenk),* 603 B.R. 671, 680 (Bankr. N.D.N.Y. 2019)).

Instead of applying all of the aforementioned probative facts, the bankruptcy court's analysis includes  only  that "the [*Brunner*] test [does not] require that the

27

Court make a determination about whether [Rosenberg's] 'state of affairs' was created by 'choice' as ECMC suggests in its papers."  (E.A. 27.)

Rosenberg does not approach satisfying prong two, even without considering his voluntary underemployment.  Still, the record is clear, any earnings limitations present for Rosenberg are self-imposed.  The bankruptcy court erred in its conclusion regarding self-inflicted obstacles.  An overwhelming, well-established, body of case law holds that, in fact, the "additional circumstances" relied upon by a debtor for second *Brunner* prong purposes must be beyond the debtor's control.  *See Brunner,* 46 B.R. at 756 ("Thus it is proper to require a debtor to show that he or she has made good faith efforts to repay the loan and that the forces preventing repayment are truly beyond his or her reasonable control."); *see also Lozada,* 594 B.R. at 226 (Bankr. S.D.N.Y. 2018), *aff'd*, 604 B.R. 427 (S.D.N.Y. 2019) (to satisfy the elements of the second *Brunner* prong, "a debtor must prove that there are 'unique and exceptional circumstances, <u>beyond [his] control</u>…that would prevent future employment and the ability to repay the debt….'")(emphasis added)).  The "additional circumstances" a debtor relies on to satisfy the second prong of *Brunner* "must be beyond the debtor's control, not borne of free choice." *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005). ("Oyler's choice to work as a pastor of a small start-up church cannot excuse his failure to supplement his income so that he can meet knowingly and

voluntarily incurred financial obligations. By education and experience he qualifies for higher-paying work and is obliged to seek work that would allow debt repayment before he can claim undue hardship); *In re Spence,* 541 F.3d 538, 544 (4th Cir. 2008) ("We have said that '[h]aving a low-paying job ... does not in itself provide undue hardship, especially where the debtor is satisfied with the job, has not actively sought higher-paying employment, and has earned a larger income in previous jobs." (quoting *In re Frushour,* 433 F.3d at 401)); *In re Gerhardt,* 348 F.3d at 92-93 (finding debtor could obtain additional steady employment in a number of different arenas… Thus, no reasons out of Gerhardt's control exist that perpetuate his inability to repay his student loans).[9]

The bankruptcy court failed to properly apply the facts of this case to the demanding requirements of *Brunner's* second prong and erred in concluding that Rosenberg satisfied *Brunner's* second prong.  If the debtor fails to satisfy any one of the prongs, the student loan debt may not be discharged.  *See Williams,* 296 B.R.

---

[9] *See In re Alderete,* 289 B.R. 410, 418 (Bankr. D.N.M. 2002, *aff'd In re Alderete,* 412 F.3d 1200 (10th Cir. 2005) (finding "[t]he Court cannot find that their ability to earn better pay in the future is limited by their current circumstances. Plaintiffs have made no real effort to search for better-paying or additional employment. Nor do the Plaintiffs currently face any additional 'exceptional circumstances,' such as illness, recent disability, or an exceptionally large number of dependants [sic], that would hamper their ability to repay the loans."); *Educ. Credit Mgmt. Corp. v. Waterhouse,* 333 B.R. 103, 112 (W.D.N.C. 2005)(finding Debtors must do "everything within their power to improve their financial situation before they can show that a current inability to … maintain a minimal standard of living … is likely to persist throughout much or all of the loan repayment period."); *See also In re Pobiner,* 309 B.R. 405, 420 (Bankr. E.D.N.Y. 2004); *In re Elmore,* 230 B.R. 22, 27 (Bankr. D. Conn. 1999)).

at 302; *Tingling,* 611 B.R. at 724.  Rosenberg's failure to meet his burden of proof

on the second prong requires a judgment in favor of ECMC.

### 3. The Bankruptcy Court erred in concluding that Rosenberg made a good faith effort to repay his ECMC Loan.

The third *Brunner* factor requires a showing "that the debtor has made good

faith efforts to repay the loans." *Brunner,* 831 F.2d at 396. This is measured by a

debtor's ability to obtain employment, maximize income, and minimize expenses,

as well as actual efforts to pay back the student loan(s).  *See Pobiner v. Educ. Credit*

*Mgmt. Corp. (In re Pobiner)*, 309 B.R. 405, 420-21 (Bankr. E.D.N.Y. 2004); *In re*

*Mosko,* 515 F.3d 319, 324 (4th Cir. 2008) (citing *O'Hearn v. Educ. Credit Mgmt.*

*Corp.,* 339 F.3d 559, 564 (7th Cir. 2003)).   The good faith test recognizes that with

the receipt of a government-guaranteed education, the student assumes an obligation

to make a good faith effort to repay those loans.  *Pobiner* at 420-21.

The bankruptcy court applied the third prong differently than what precedent

calls for and opined that under the third prong  "…the Court should only consider

[Rosenberg's] past (i.e. prepetition) behavior in repaying the loans."  The bankruptcy

court opined, "[i]t is therefore inappropriate to consider: [Rosenberg's] reasons for

filing bankruptcy; how much debt he has; or whether [Rosenberg] rejected

repayment options."  (E.A. 28.)

Even under the bankruptcy court's tortured take on the appropriate analysis,

Rosenberg has not demonstrated good faith efforts to repay his student loans under

any of the critical considerations.  First, Rosenberg's repayment history does not reflect a good faith effort to repay his student loans.  Second, Rosenberg has refused to consider rehabilitating his loan or applying for an income-based repayment plan. Third, Rosenberg has minimized rather than attempted to maximize his income. Fourth, Rosenberg has failed to minimize his expenses.

### a. Rosenberg's nominal payment history failed to establish he made a good faith effort to repay his loan.

The bankruptcy court held that because Rosenberg made 10 payments on the ECMC Loan over a period of almost 13 years – with the loan being in deferment or forbearance for almost the entirety of that period – he demonstrated good faith efforts to repay the ECMC Loan.  (E.A. 28-29.)  Once again, the bankruptcy court's analysis was flawed.  While availing himself of deferment or forbearance may not automatically preclude a finding of good faith, a finding of good faith efforts to repay cannot be inferred where Rosenberg simply dodged paying for approximately 10 ½ years out of the 12 ½ years between disbursement and default. *See In re Spence,* 541 F.3d at 545 ("Obtaining the deferment of student loans is not sufficient to demonstrate a good faith effort to repay them when the deferment is followed by not one payment or any effort to work out a reasonable payment schedule."); *In re Perkins,* 318 B.R. 300, 312 (M.D.N.C. 2004) ("[b]y obtaining six forbearances and declining to pay even the interest during such forbearances, the Plaintiff unnecessarily increased her indebtedness.").

31

A lack of payments is an important factor in the good faith determination. *See Brunner,* 831 F.2d at 397; *In re Thoms*, 257 B.R. at 150 (Bankr.S.D.N.Y.2001) (good faith not shown where the "[d]ebtor only made seven payments totaling $683.69 from 1991 to 1993 and has made no payments at all since receiving her master's degree"); *see also In re Gill,* 326 B.R. 611, 640-41 (Bankr. E.D.Va. 2005); *In re Cunningham,* No. 04-2636, 2006 WL 1133923, *4 (N.D.W.Va. Apr. 26, 2006) ("[A]ppellant's sole payment of $25.00 toward her graduate loans as well as her failure to make any regular payments toward her graduate loans are relevant to the Court's finding of no good faith."). Significant here, Rosenberg had earnings more than sufficient to make his student loan payment for much of the 12 ½ years, but opted not to.[10] For a highly educated and capable person like Rosenberg, paying only $2,983.90 on a $116,464.75 loan over the course of 12 ½ years falls woefully short in meeting his burden of proving that he made good faith efforts to repay the loan.

Instead of making good faith payments, Rosenberg filed for bankruptcy with the dominant purpose of discharging his student loans. Where a debtor's dominant purpose in filing for bankruptcy in filing for bankruptcy is to discharge his or her student loan obligations, a finding of good faith under the third prong of *Brunner* is

---

[10] For example, Rosenberg made between $70,000 and $80,000 in 2007, yet did not make a single payment on his student loan that entire year.

not warranted.  *See In re L.K.*, 351 B.R. 45, 55-56 (Bankr. E.D.N.Y. 2009)(denying discharge to debtor whose student loan debt constituted 70% of debt scheduled in bankruptcy case); *In re Pobiner¸ 309 B.R. at 421; Holzer v. Wachovia Servs., Inc. (In re Holzer)*, 33 B.R. 627, 632 (Bankr. S.D.N.Y. 1983)(good faith prong not satisfied where, *inter alia*, student loans were only debts listed in debtor's schedules).  Here, Rosenberg's student loans represent 99.87% of the debts listed in Schedule F to his bankruptcy petition.  Moreover, Rosenberg acknowledged at his deposition that the main purpose of filing his bankruptcy petition was to attempt to discharge his student loans.  (E.A. 324, ¶ 21; E.A. 105:19-24.)

Clearly, making only nominal payments throughout the life of the ECMC Loan, and then filing for bankruptcy for the dominant purpose of discharging his student loans, cut against a finding of good faith on Rosenberg's part.

### b. Rosenberg refuses to rehabilitate the ECMC Loan and obtain an affordable payment for his student loan.

Rosenberg is eligible, as a matter of law, for various income-driven repayment options that allow for an affordable monthly payment.  *See generally* 34 C.F.R. 682.215, 34 C.F.R. § 685.209[11].  The bankruptcy court disregarded these

---

[11] Rosenberg's loan is a federal consolidation loan, and as such, is eligible to be consolidated in a Direct Loan Consolidation Loan pursuant to Federal Regulations.  *See* 34 C.F.R. § 685.220 (b) and (d).  Once consolidated, the borrower of a Direct Loan is eligible for any of the income-driven repayment options available in 34 C.F.R. § 685.209, including the Revised Pay As You Earn repayment plan ("REPAYE") found in 34 C.F.R. § 685.209(c).  The required annual REPAYE payment is calculated as 10% of earnings above 150% of the federal poverty guideline for the applicable family size.  34 C.F.R. § 685.209(c)(2).  The annual payment amount can be

regulatory options as "not currently before the court" and "hypothetical," and ultimately compared the rehabilitation process, that he is entitled to as a matter of law, as an unaccepted settlement agreement.  (E.A. 26.)  The bankruptcy court's analysis is fundamentally flawed.  Again, these options are part of the federal student loan program.  There is nothing hypothetical or "not before the court" about the federal law governing Rosenberg's loan prescribed in federal regulations. Unlike a settlement agreement, rehabilitation and income-driven repayment plans are available to a borrower as a matter of law.   *See* 34 C.F.R. § 682.405; E.A. 352-353.

The record is clear: Rosenberg refused to participate in an income-driven repayment plan, even if the payment was nominal, explaining:  "No. My experience is they keep playing games with all that stuff, and I am not willing to do that." (E.A. 110:11-13.) Instead, Rosenberg filed bankruptcy with the dominant purpose of discharging his student loans. [12]

---

divided by 12 to calculate the monthly payment amount.  *Id.*  The remaining balances are cancelled after 20 years (if undergraduate loans) or 25 years (if graduate loans).  *Id.* at § 685.209(c)(5).

[12] Where a debtor's dominant purpose in filing bankruptcy is to discharge his or her student loan obligations, a finding of good faith under the third prong of Brunner is not warranted.  See *In re L.K.*, 351 B.R. 45, 55-56 (Bankr. E.D.N.Y. 2006)(denying discharge to debtor whose student loan debt constituted 70% of debt scheduled in bankruptcy case); *In re Pobiner*, 309 B.R. at 421; *Holzer v. Wachovia Servs., Inc. (In re Holzer)*, 33 B.R. 627, 632 (Bankr. S.D.N.Y. 1983)(good faith prong not satisfied where, inter alia, student loans were only debts listed in debtor's schedules). Here, Rosenberg's student loans represent 99.87% of the debts listed in Schedule F to his Petition.  Rosenberg acknowledged at his deposition that the main purpose of filing his

While income-driven repayment plans are not a replacement for the undue hardship standard, the availability of income-driven repayment options plays a "substantial role" in the undue hardship determination. *See In re Thoms*, 257 B.R. at 149 (student loan discharge denied in part due to debtor's failure to avail herself of payment options); *Grubin v. Sallie Mae Servicing Corp., LP, et al. (In re Grubin)*, 476 B.R. 699, 712 (Bankr. E.D.N.Y. 2012) (holding "sublime flexibility" afforded to debtor through various repayment options and debtor's refusal to accept any such options, precludes a finding of undue hardship); *Hlady* at *10 ("Where a debtor is eligible to enroll in an income-based repayment program, the debtor must demonstrate how she will be unable to make the limited payments required under the formula and still maintain a minimal standard of living."); *In re L.K.,* 351 B.R. at 54-55 (concluding debtor failed to show good faith because she rejected consolidation options); *In re Tingling,* 611 B.R. at 727-28 ("...the Debtor declined an opportunity to enter into various repayment options, including but not limited to the Ford Program."); *Pobiner,* 309 B.R. at 421 (denying discharge, in part, because debtor refused to avail himself of the Ford Program's ICRP option); *In re Lozada,*

---

bankruptcy petition was to attempt to discharge his student loans.  (E.A. 324, ¶ 21; E.A. 105:19-24.)

604 B.R. at 437 (Considering the debtor's failure to enter into an income-based repayment program in the context of other relevant circumstances is appropriate.).[13]

Rosenberg's outright refusal to consider the low payments available to him, as a matter of law, cuts against a good faith determination.  The bankruptcy court erred in the application of these programs to *Brunner's* third prong.

### c.  Rosenberg failed to demonstrate good faith by maximizing his income.

An important part of the good faith inquiry is a debtor's efforts to maximize his income.  *See Tingling,* 611 B.R. at 725 (finding courts assess whether the debtor has sought to maximize income while minimizing expenses); *In re Jean-Baptiste,* 584 B.R. 574, 587 (Bankr. E.D.N.Y. 2018); *In re Pincus,* 280 B.R. 303, 318 (Bankr. S.D.N.Y. 2002); *Hlady* at *9.

Rosenberg has a proven track record of being able to make substantially more money in the legal profession than he currently earns, such as when he made between $70,000 and $80,000 working as a contract attorney.  (E.A. 219, 221.)

---

[13] *See also Wieckiewicz v. Educ. Credit Mgmt. Corp.*, 443 Fed Appx. 449, 451 (11th Cir. 2011); *Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch),* 409 F.3d 677, 682 (6th Cir. 2005) (debtors who decline an income contingent repayment program have difficult time convincing court to discharge their student loan debt); *Frushour,* 433 F.3d at 402 ("Although not always dispositive, [debtor's] efforts to consolidate illustrate[] that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances."); *In re Alderete,* 412 F.3d at 1206 (Agreeing with bankruptcy court that while a repayment program is not required to satisfy the food faith prong, it is an important indicator of good faith.); *Educational Credit Management Corp. v. Jesperson,* 571 F.3d 775, 782-83 (8th Cir. 2009) (holding that the debtor's eligibility for an income based repayment program, combined with his other circumstances, required a conclusion of no undue hardship).

Still, Rosenberg voluntarily left the practice of law and has refused to pursue employment within the legal field.

The evidence in the record established that even if he continues to refuse to work as an attorney, at a minimum, Rosenberg is qualified for the following employment: (i) as a legal assistant or paralegal, at salaries ranging from $42,000 to $120,000; (ii) as a retail store manager, at salaries ranging from $45,000 to $100,000 per year; and (iii) in customer service or entry level sales positions, at salaries ranging from $36,000 to $50,000 per year.  (E.A. 223-227.)

To establish good faith, the debtor must prove that the forces preventing repayment are beyond his reasonable control.  *Brunner,* 46 B.R. at 756.  "[T]he debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control."  *In re Pobiner*, 309 B.R. at 420 (quoting *In re Elmore*, 230 B.R. 22, 27 (Bankr. D. Conn. 1999)).

Rosenberg has made no effort to maximize his income; rather, he chose to voluntarily leave working as an attorney and has inexplicably opted to limit his income by his refusal to pursue law-related employment, or other higher-paying employment for which he is qualified.  Rosenberg's complete failure to maximize his income should have prevented him from meeting *Brunner's* third prong.  *See Pobiner,* 309 B.R. at 420-21 (holding that the plaintiff failed to satisfy the good-faith element of the *Brunner* test, based on, *inter alia*, his admission that, "he has not

made any effort to find work for an employer other than … his own contracting business, because of his desire to be his own boss."); *In re Alderete,* 412 F.3d 1200,1205 (10th Cir. 2005) (reversing lower courts and denying undue hardship discharge to debtors working in low-paying jobs that did not utilize their degrees); *Oyler*, 397 F.3d at 386 (finding, "[c]hoosing a low-paying job cannot merit undue hardship relief."); *Gerhardt*, 348 F.3d at 93 (finding, nothing in the Bankruptcy Code allows a student loan borrower the choice to work in a lower paying field and discharge his student loans at the expense of the taxpayers); *In re Frushour*, 433 F.3d at 401 (concluding, "[h]aving a low-paying job, however, does not in itself provide undue hardship, especially where the debtor is satisfied with the job, has not actively sought higher-paying employment, and has earned a larger income in previous jobs.").

### d.  Rosenberg failed to establish good faith by minimizing expenses.

Good faith under the third prong requires "efforts to obtain employment, maximize income, and minimize expenses."  *In re Tingling,* 611 B.R. at 727; *In re Pobiner,* 309 B.R. at 420; *In re Mosko,* 515 F.3d at 324 (citing *O'Hearn,* 339 F.3d at 564).  A debtor's refusal to minimize her expenses precludes an undue hardship discharge of any portion of the student loan.  *Tennessee Student Assistance Corp. v. Mort (In re Mort)*, 272 B.R. 181, 185, (Bankr. W.D. Va. 2002).  Instead of minimizing his expenses, Rosenberg has intentionally increased them.  He lived in

an apartment in Park Slope, New York, where he paid rent of $1,450 per month.
(E.A. 325, ¶ 27.)   In 2016, while still living alone, he chose to substantially
increase his rent expenses to $2,150 per month by moving to a three-bedroom,
single-family house in Beacon, New York, where he still resides today.  (E.A. 325,
¶¶ 25-26.)  Rosenberg acknowledged less expensive housing is available in his
area.  (E.A. 325, ¶ 29.)

   Rosenberg's decision to *increase* his housing expense by $700 per month and
continue to live in a three-bedroom single-family house, by himself, at a rate of
$2,150 per month, when there are less expensive housing options in his area[14], cuts
hard against a finding of good faith.[15]

   Rosenberg has not minimized his expenses, he has not maximized his
income, he refuses income based repayment options, and he has made only
minimal payments.  All of the critical good faith factors cut heavily against

---

[14] Rosenberg claims he cannot afford to move to less expensive housing.  (E.A. E.A. 325, ¶ 29).  However, given that he seeks to discharge his student loan debt as an undue hardship, the opposite seems to be true: he cannot afford to *stay* in the more expensive housing.

[15] *See Motor v. Great American Federal Savings and Loan Association*, 64 B.R. 317, 318 (Bankr. W.D. Pa. 1986) (holding debtor could find a boarder or sell the house and rent himself); *Educ. Credit Mgmt. Corp. v. DeGroot*, 339 B.R. 201, 210 (D. Ore. 2006)(where debtor was a single woman with no dependents living in a three-bedroom house, court noted that the income from taking on a roommate would allow her to "meet her student loan obligation at no further detriment than she is currently facing");  *Miller v. Sallie Mae, Inc., et al.*, 409 B.R. 299, 321 (Bankr. E.D. Pa. 2009)(where debtor's failure to show that she would still be unable to make student loan payment if she moved to more affordable housing precluded an undue hardship determination).

Rosenberg.  The bankruptcy court erred in applying these factors to the good faith prong. For this independent reason, Rosenberg could not establish an undue hardship and ECMC's summary judgment motion should have been granted and Rosenberg's motion denied.

## VI.   <u>CONCLUSION</u>

The undisputed facts of this case demonstrate that Rosenberg is a well-educated, healthy individual with no dependents.  He has a history of good earnings, but voluntarily left the practice of law and has refused to even explore re-entry.  Even outside of being a lawyer, numerous employment opportunities exist for his specific experience and skill set.  Any purported financial hardship is of his own making.  He has failed to meet his burden under all three individually-determinative *Brunner* prongs.  Despite the facts of this case not approaching an undue hardship under Second Circuit precedent, or anywhere for that matter, the bankruptcy court attempted to rewrite more than 30 years of case law interpreting Section 523(a)(8) of the Bankruptcy Code.  For all the reasons argued *supra*, this Court should reverse the bankruptcy court's granting of summary judgment in favor of Rosenberg and denial of ECMC's Cross-Motion, and determine that Rosenberg is not entitled to an undue hardship discharge of his taxpayer-funded student loan.

Dated: Hackensack, New Jersey
   May 20, 2020

        LAW OFFICES OF KENNETH L. BAUM
        LLC
        Attorneys for Appellant Educational Credit
        Management Corporation

     By: */s/ Kenneth L. Baum*
        Kenneth L. Baum
        167 Main Street
        Hackensack, NJ 07601
        (201) 853-3030
        (201) 584-0297 Facsimile

## **STATEMENT OF ORAL ARGUMENT**

ECMC submits that oral argument would be beneficial in aiding the Court to

adjudicate the issues on appeal.

Dated: Hackensack, New Jersey
     May 20, 2020

                    LAW OFFICES OF KENNETH L. BAUM
                    LLC
                    Attorneys for Appellant Educational Credit
                    Management Corporation

          By:    */s/ Kenneth L. Baum*
                  Kenneth L. Baum
                  167 Main Street
                  Hackensack, NJ 07601
                  (201) 853-3030
                  (201) 584-0297 Facsimile

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) or

8016(d)(2) because this brief contains 11,436 words.


Dated: Hackensack, New Jersey
     May 20, 2020

                            LAW OFFICES OF KENNETH L. BAUM LLC
                            Attorneys for Appellant Educational Credit Management Corporation

                By:   */s/ Kenneth L. Baum*
                       Kenneth L. Baum
                       167 Main Street
                       Hackensack, NJ 07601
                       (201) 853-3030
                       (201) 584-0297 Facsimile