**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>KEVIN JARED ROSENBERG,<br><br>                                    Debtor, | Bankr. Case No. 18-35379-cgm<br><br>Chapter 7<br>ADV. PRO. NO. 18-09023-cgm |
| EDUCATIONAL        CREDIT        MANAGEMENT<br>CORPORATION,<br><br>                           Appellant,<br><br>  v.<br><br>KEVIN JARED ROSENBERG<br><br>                          Appellee. | Case No. 7:20-cv-00688-PMH |

## BRIEF IN OPPOSITION TO APPELLANT EDUCATIONAL CREDIT MANAGEMENT CORPORATION'S BRIEF

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**

**LEGAL STANDARD**

**STATEMENT OF THE CASE**

**SUMMARY OF ARGUMENT**

**ARGUMENT**

## I.   <u>STATEMENT OF THE CASE</u>

Rosenberg began borrowing money to fund his education in August 1991.  E.A. at.  368.

Until 1996, he continued to borrow money to pay for his undergraduate education at the

University of Arizona.  *Id.*   Rosenberg incurred $179,000 in private loans from Access Group

("Access Group Debt") E.A. at 88, 8:5-7.  After obtaining a Bachelor of Arts degree in History,

he served in the United States Navy on active duty for five years.  E.A. at 88, 8:5-7.  After

completing his tour of duty, Rosenberg attended Cardozo Law School at Yeshiva University

where he applied for and received additional student loans to cover his tuition and board from

2001 through 2004 when he graduated.  E.A. at 88, 7:7-23.  Kevin then fought in the War on

Terror as a collateral Intelligence Officer and Surface/Subsurface Warfare Officer. E.A. at 88,

8:5-7. Petitioner consolidated his FFELP student loan debt with Citibank ("Citibank Debt") on

April 22, 2005 in the original principal amount of $116,464.75.  E.A. at 351, ¶ 7.  On the date of

the petition to which ECMC added $40,000 in legal fees and collection costs to the Citibank

Debt. The total outstanding balance of this Citibank Debt as of November 19, 2019 was

$221,385.49 with an interest rate of 3.38% per annum.  E.A. at 7.  Rosenberg entered into a

confidential settlement for the Access Debt.

Appellee filed a petition for relief under Chapter 7 of the Bankruptcy Code on March 12,

2018.  E.A. at 167.  On January 17, 2018, ECMC took a reinsurance payment of $165,380 from

its federal funding account. E. A. at 368.  E.A. at 352, ¶ 10. On March 22, 2018, ECMC reported

the debt as defaulted and bankrupt. On or about April 6, 2018, ECMC sold the Loan to Deutsche

Bank.  E. A at 368. On June 18, 2018, Appellee filed an adversary proceeding seeking to

discharge his student debts pursuant to 11 U.S.C. § 523(a)(8).  E.A. at 30, Bk. Dkt. 3.  After contentious, Rosenberg entered into a confidential settlement with Access, the terms of which cannot be disclosed, but ECMC refused to settle. E.A. at 34, Bk. Dkt. 3.  On August 27, 2019, Rosenberg filed for summary judgment.  E.A. at 34, Bk. Dkt. 3.  On October 8, 2019, ECMC filed a Cross Motion for Summary Judgement and opposition to Petitioner's Motion.  *Id.* Bk. Dkt. 44.  On October 22, 2019, Appellee filed his response to ECMC's motion.  E.A. at 35, Bk. Dkt. 53. On November 19, 2019, ECMC filed its supplemental response to Appellee's motion. *Id.* Bk. Dkt. 58.   On January 7, 2020, the bankruptcy court issued its decision in favor of Appellee.  E.A. at 37, Bk. Dkt. 68.

## II.    SUMARY OF ARGUMENT

Rosenberg makes three arguments in support of the bankruptcy court's decision. First, he bankruptcy court properly applied the facts of Rosenberg's bankruptcy proceeding to the Brunner standard.  ECMC makes very few factual arguments, and few if any legal arguments in support of reversal. Rather, ECMC seems content to pick over the court's findings and add its own gloss on why the decision will be catastrophic for ECMC.  Second, if this court chooses to affirm judgment for Rosenberg on an alternate ground, it can easy find that ECMC is estopped from making virtually every single argument it proposes because it has taken contradictory positions in countless other proceedings. Third, ECMC's cross appeal must fail for the simple reason that ECMC never addressed its own burden of production.  The mere fact that ECMC thinks "it was obvious" is not a sufficient legal argument.

## III.    <u>ARGUMENT</u>

A. **LEGAL STANDARD**

"[T]he exception to discharge of a debt in bankruptcy set out in § 523(a)(8) must be narrowly construed, with the burden of proof on the creditor colleges to prove the claims not dischargeable." *In re Renshaw*, 222 F.3d 82, 90 (2d Cir. 2000). *See also Graddy v. Educ. Credit Mgmt. Corp.*, 2020 WL 2988370, at *7 (N.D. Ga. June 4, 2020)("The creditor has the initial burden to establish it is owed a debt and that that the debt falls within Section 523(a)(8).").[1]" In general, any evidence presented in connection with § 523(a)(8) must be viewed with the Congressional intent that exceptions to discharge be narrowly construed against the creditor and liberally in favor of the debtor in order to provide the debtor with comprehensive relief from the burden of his indebtedness. *In re Olson*, 454 B.R. 466, 472 (Bankr. W.D. Mo. 2011). "This principle applies equally to student loan exceptions to discharge" *In re Page*, 592 B.R. 334, 338 (B.A.P. 8th Cir. 2018).   Only after the credit proves its debt comes within the scope does the burden shift to the debtor to prove undue hardship. *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987).  This requires finding that "that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. For the reasons set forth in the district court's order, we adopt this analysis." *id*. "A judge asked to apply a multi-factor standard interpreting an open-ended statute necessarily has latitude; the more vague the standard, the harder it is to find error in its application." *Krieger v. Educ. Credit Mgmt.*

---

[1] ECMC met its burden of showing that the Student Loans were covered by Section 523(a)(8). Ms. Skerbinc testified that the loans held by ECMC were 'made under a program funded in whole or part by a governmental unit or non-profit,' the Federal Family Education Loan Program (FFEL). She testified that the loans had all been assigned to ECMC prior to the trial date as a result of claims being made on the loan guarantees.").

*Corp.*, 713 F.3d 882, 885 (7th Cir. 2013). T]he statutory inquiry is "undue hardship," a case-specific, fact-dominated standard, which implies deferential appellate review." *Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 884 (7th Cir. 2013) (Posner, J). [2]*Krieger v. Educ. Credit Mgmt. Corp.*, 713 F.3d 882, 885 (7th Cir. 2013) ("In *Roberson* we boiled the three criteria down to 'certainty of hopelessness.' That sounds more restrictive than the statutory 'undue hardship.'"). In *re Hoskins*, 292 B.R. 883, 887 (Bankr. C.D. Ill. 2003).

## B.  <u>First Prong</u>

The bankruptcy court properly articulated the first prong, "that the debtor cannot maintain, based on *current* income and expenses, a 'minimal' standard of living if [he is] forced to repay the loans." E. A. The Court applied the facts to that legal element: Rosenberg's monthly income was $2,456.24, monthly expenses were $4005.00, netting income of negative $1,548.74. *E. A.* ___. As the Petitioner has a negative income each month, he has no money available to repay his Student Loan and maintain a "minimal" standard of living. This prong of the test is met." E.A. __. ECMC does not argue the court made any erroneous factual findings under the first prong, nor does it even raise a different fact that was not considered.  . E. A. ___. Instead, ECMC simply  argues that, "the court's findings are incomplete as to whether the record, as it existed on summary judgment, was sufficient for a determination as a matter of law on the first Brunner

---

[2] J ECMC has spent the last thirty years arguing that rhetorical flourish in Brunner "certainty of hopelessness." *In re Hoskins*, 292 B.R. 883, 887 (Bankr. C.D. Ill. 2003).  That language was coined by Judge Lifland—a noted wit of the Western District.  Although much is written about this term of art, the case in which Judge Lifland coined it is less often read. Judge Lifland described the "classic case" of undue hardship in the following terms, "the debtor is spending more money per week than she takes in. To pay anything on the student loan, would work an undue hardship both upon the debtor and upon the debtor's dependents. *Matter of Diaz*, 5 B.R. 253, 254 (Bankr. W.D.N.Y. 1980). When asked how she managed to feed three people on $150 per month, she replied they eat a lot of spaghetti." *Matter of Diaz*, 5 B.R. 253, 254 (Bankr. W.D.N.Y. 1980). Eating a lot of spaghetti. Judge Lifland did not seem to be talking about the hopeless of a human life so much as the hopelessness of repayment.

prong." E. A. ___. [3] However, that is procedurally impossible in this appeal either because the appeals or else because the two have merged.  ECMC has already represented to this court that "the **undisputed portion of the factual record before the District Court**, ECMC was entitled to judgment as a matter of law, and this Court has the authority to grant that relief."  ECF 11 at 4. ECMC should not heard to now argue that "the bankruptcy court disregarded these regulatory options as "not currently before the court" and "hypothetical." (E.A. 26.). ECMC should be estopped.  It cannot obtain leace to appeal on the grounds that the undisputed portion of the record, and then once it prevails, attack the very record. *Educ. Credit Mgmt. Corp. v. Curiston*, 351 B.R. 22, 25 (D. Conn. 2006)("ECMC represented both in its Appellate Brief, and in its Reply Brief that it 'has not challenged the Bankruptcy Court's findings of fact . . .  [i]n view of ECMC's representations, which were repeated at oral argument, the Court ignores the portion of any argument by ECMC that contests the Bankruptcy Court's factual findings or is based upon any other, contrary factual finding.").[4]

If this court decides against that course, on the merits, ECMC fares no better. ECMC argued that "there is nothing hypothetical about these regulatory-proscribed options, as Rosenberg is entitled to avail himself of them as a matter of law (citing 34 C.F.R. §§ 682.405; 682.215; 685.209. But ECMC specifically posed the issue of IBR as a conditional hypothetical ("Q. So even if your payments were hypothetically zero or $50 a month, you wouldn't consider doing

---

[3] This was the very reason Rosenberg opposed the cross appeal.  CITE ("whatever dispute ECMC has with this result must be a factual issue, which is not suitable for an interlocutory appeal . . .ECMC has no factual record for this Court to review but is rather asking this Court to create a factual record upon which this Court would also exercise appellate jurisdiction. This is not a suitable posture for an interlocutory appeal." *Buckskin Realty Inc. v. Greenberg,* 552 B.R. 40, 45 (E.D.N.Y. 2016) ("In order to reach a conclusion on this question, the court would have to conduct fact-finding."). If this Court reverses the final order of the bankruptcy court, ECMC can then renew its motion for summary judgment. The bankruptcy court will then make findings of established facts. t

[4] *In re Crawley*, 460 B.R. 421, 433 (Bankr. E.D. Pa. 2011)("ECMC's counsel agreed that the court could consider all of the evidence regarding the Debtor's circumstances through the date of trial.[11] In its post-trial brief, ECMC backtracked from its earlier position and argued that the court should restrict its consideration of undue hardship to the Debtor's circumstances "at or near the petition date." In these circumstances, I consider the issue waived and not revivable by being resurrected in a post-trial brief.")

that even if the remainder of the loan were written off in the end?"); ("if there was a program, an income-driven repayment option, that if your income was low, it would require you to make very low, if any, payments over a given time, and then it would be adjusted based upon your income, either increasing or decreasing, is that something you.").[5] E. A.110-112 . Furthermore, ECMC the only fact it has from its affiant states "Debtor *could b*e eligible." That is a rather significant difference. *See also In re Harvey*, 2013 WL 4478926, at *5 (Bankr. D. Colo. Aug. 20, 2013) (debtor rejected for IBR plan after ECMC testified that because of their income the debtor would "likely qualify" for $0 per month).

ECMC has lost the distinction between the existence of a law, and a particular individual's eligibility for relief under the law. ECMC is no more capable of arguing that on appeal than Kevin would have been arguing he was eligible as a matter of law for undue hardship in 2018. Only the court can make that determination.   ECMC failed to introduce the two pieces of evidence necessary to enable this Court to make the determination.   First, ECMC needed to provide the court with a legible and complete contract.   E.A.355 *See also New York Legal Assistance Grp., Inc. v. United States Dep't of Educ.,*2017 WL 2973976, at *9 (S.D.N.Y. July 12, 2017) (federal student loans are governed by contract). Instead, ECMC submitted four illegible pages of a nine-page contract.   *In re Arroyo*, 470 B.R. 18, 26 (Bankr. D. Mass. 2012) ("The DOE submitted a copy of the promissory note the Debtor signed for the Student Loan, but the image quality makes its terms impossible to read. Thus, it is impossible for me to tell when the Debtor defaulted under the terms of the Student Loan or whether the terms of default are described in

---

[5] Both of ECMC's prposed regulations explicitly exclude defaulted loans from eligibility. 34 C.F.R 685.209 ("outstanding loan made to a borrower under the FFEL and Direct Loan programs except for a defaulted loan"), and 34 C.F.R 685.209(a)(1)(ii) (eligible loans include "outstanding loan made to a borrower under the Direct Loan Program or the FFEL Program except for a defaulted loan.").

the note at all.") [6] Second, ECMC would have needed to connect the precise regulation or regulations it advocated Kevin utilize to the terms of the contract. *United States v. Cohan*, 111 F. Supp. 3d 166, 173 (D. Conn. 2015)(" Both parties relied on the regulatory language at oral argument, and based on the governing law section of the promissory note, I find "no serious room for doubt that the [statutory and] regulatory language is incorporated by reference into the promissory note.")[7]*Matter of Williams*, 9 B.R. 1004, 1011 (Bankr. E.D. Va. 1981) ("The repayment period is determined from the definite date set forth in the applicable promissory note.").[8]   Third, ECMC would have needed to admit Kevin's stated income and expenses or else offer its own figures. E.A. 25. ECMC did not want to do this, presumably because it never wanted to commit to one set of figures or another. *Rhodes*, 464 B.R. 918, 921 (W.D. Wash. 2012) ("ECMC provided evidence of the payments which would be required under two income-based repayment plans if none of the debt is discharged. Under the REPAYE Plan, …$605.20 per month, and under the IBR Plan, $907.80 per month.") ("To the extent ECMC is asking the Court to take judicial notice that the repayment terms obtained by

---

[6] I*n re Green*, 212 B.R. 160, 163 (Bankr. N.D. Ala. 1997)(leaving for another day the question of "whether the promissory note the debtor signed on August 13, 1986, which specifically requires construction of the note's terms in accordance with United States Department of Education Regulations, requires this Court to apply those regulations to the pending matter; and whether the Department's Regulation 34 C.F.R. § 682.402(m)(5) that defines "applicable suspension of the repayment period," would apply, and if it does, whether the Regulation definition in effect at the time the debtor signed the note, the one in effect when the debtor became in default, or the one in effect when the debtor filed her two bankruptcy petitions, would apply. *").*

[7] "The statute and regulations governing alternative income documentation are broadly drawn and leave much to the DOE's discretion regarding (1) whether defendant's AGI "reasonably reflect[ed]" his current income in late 2001 or early 2002, (2) whether the DOE should consider other documentation of defendant's income, or (3) whether the documentation that defendant submitted was "satisfactory." 20 U.S.C. § 1087e(e)(3); *see also* 34 C.F.R. § 685.209(c)(1)."

[8] *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 644 (7th Cir. 2015)("We agree with Bible that the MPN incorporated the HEA and its associated regulations. "Other writings, or matters contained therein, which are referred to in a written contract may be regarded as incorporated by the reference as a part of the contract and, therefore, may properly be considered in the construction of the contract." The page of the contract that sets out the terms of the loan refers to the HEA and its regulations no fewer than 16 times, though once would be enough.

using the interactive calculator available on the DOE's website are accurate, the Request is denied.").[9]

ECMC could have sought to reverse and remand the final order, and proceeded to trial. ECMC could have sought reconsideration. *Reid v. Google, Inc.*, 50 Cal. 4th 512, 535 (2010)("Google did not ask the Court of Appeal to remand the matter to the trial court for evidentiary rulings, its remand request comes too late."). The court's holding must stand.

## C. **Second Prong**

 "The repayment period has ended. Petitioner is in default and his loan was accelerated. As of November 19, 2019, Petitioner is responsible for the repayment of the full amount of $221,385.49. His circumstances will certainly exist for the remainder of the repayment period as the repayment period has ended and the loan is due and payable in the full amount. The second prong of the *Brunner* test is, therefore, satisfied." *In re Rosenberg*, 610 B.R. 454, 461 (Bankr. S.D.N.Y. 2020).

ECMC's arguments under prong two do not differ materially from prong one and overlap in a number of places. This is of course violates the cannon of superfluity. "ECMC is aware of no case in the country that has held there is no repayment period on defaulted loans for purposes of analysis of the second Brunner prong." ECMC Brief at 25. That is, once again, not an argument so much as an observation. *See In re Renville*, 2006 WL 3206126, at *8 (D. Mont. Nov. 3, 2006) (ECMC subjective feelings are not demonstrative of clear error on the part of the Bankruptcy Court."). An overwhelming, well-established, body of case law holds that, in fact, the "additional circumstances" relied upon by a debtor for second Brunner prong purposes must

---

[9] . *In re Cota*, 298 B.R. 408, 421 (Bankr. D. Ariz. 2003) ("Neither document was submitted into evidence. ECMC's counsel could not answer the court's questions about what would actually be available to Mr. Cota, but suggested would probably owe nothing currently, but that 'the calculations' had not been done."). "ECMC introduced evidence regarding the William D. Ford Direct Consolidation Program.; *In Re Murray*, 563 B.R. 52, 59–60 (Bankr. D. Kan. 2016)

be beyond the debtor's control.  *See Brunner*, 46 B.R. at 756. ECMC cites nothing for this statement.  Any ongoing hindrance to repayment is completely in Rosenberg's control, as his circumstance is easily overcome by remedies available to Rosenberg as a matter of law, right in the regulations governing his loan. No citation to the record.  ECMC still offers no alternative repayment period.  ECMC does not define the term "beyond the debtor's control," which is odd as it is a rather important concept in law. Wisely, ECMC does not argue the default as in his control. Default was at all times within the control and discretion of Citibank and ECMC.

Second, ECMC states that, "none of these factors cut towards discharge. Rosenberg is relatively young, with many working years ahead of him; in good health, with no dependents; and, based on his education and experience, is highly employable in a number of areas." ECMC Brief at 27. This is little more than a string of adjectives and words like "relatively" and "good" and "highly" are not summary judgment words. *Kotuby v. Petrill*, 2005 WL 2335347, at *5 (W.D. Pa. 2005) (opposition to summary judgment is filled with adjectives and some discussion of how the law supports"). *"*Although ECMC put forth arguments about the Debtor's future solvency prospects, it offered no evidence on the issue." *In re Walrond-Rogers*, 2008 WL 2478389, at *3 (Bankr. D. Mass. June 17, 2008).  Importantly, ECMC's expert only concludes that Kevin "*would likely*" earn money at his estimated rates ("this is an area of high demand and Mr. Rosenberg would likely be able to obtain salary similar to what he had earned in 2007 of $70,000 to $80,000 per year or higher."); E.A. ___ ("Some are in specific industries where he has not worked directly, but it would be up to the employer to determine if his law degree would qualify him for employment."); ("reflect opportunities that do not rely solely or heavily on commission sales "). And ECMC's expert agrees with suggesting Kevin might be better off working out in the legal industry. ("Pursuing continued employment in this industry may provide

higher future wages than he could find using his past training as a lawyer."). ECMC's expert is engaged in the unauthorized practice of medicine. ("The medical documents provided for this report [medical & chiropractic records reviewed: Veterans Administration Records] do not indicate any specific physical limitations or restrictions placed on Mr. Rosenberg by his doctors.").[10] "The opinions expressed in this report are subject to change based on new or additional information."[11] S*chwartz v. Hawkins & Powers Aviation, Inc.*, 2005 WL 3164277, at *3 (D. Wyo. Nov. 7, 2005) (expert disclaimer "that provides the reports are preliminary in nature and are subject to change if additional discovery is considered. This is unacceptable to the Court.").

ECMC again tries to argue that some combination of IBR and loan rehabilitation or consolidation. What possibly gives this is the presence of hard estimate that could have easily been put through the IBR calculator. And since Rosenberg is not suggesting to use them as facts but rather more like case law. Except that ECNCs expert disclaimed that. he was not an accountant. ("I am not an accountant and I do not intend to provide opinions on his actual earnings based on his tax returns in those years. ").For example, if Rosenberg took a job as a sales-clerk with the government's suggested annual increase of 2%, the total amount paid over the next 25 years would be approximately $38,000 and the total forgiven in 2045 would be

---

[10] But see Rosenberg's Response at E.A. ___ The need for corroborating evidence is especially acute when a debtor alleges some type of medical or mental issue is so persistent in nature that she is prevented from retiring a student loan." *In re Greene*, 484 B.R. 98, 123 (Bankr. E.D. Va. 2012),

[11] It would also appear that the government's agent is using an unlicensed medical expert to conduct the practice of medicine over the telephone. *Catanese v. Furman*, 9 A.D.3d 863, 863 (N.Y. App. Div. 2004) ("Plaintiffs' expert was not licensed to practice medicine in New York, a fact misrepresented to defendants when plaintiffs submitted the expert's affirmation in opposition to defendants' motion.")

$350,000.[12]  ECMC is asking to be paid to service a debt that it argues as a matter of law will remain in negative amortization for 25 years, and then transfer the liability to the IRS. "The import of that argument is that under ECMC's plan, the debtor will be kept insolvent, if not entirely impoverished, until she is eighty years old and the debt is forgiven – what a pleasant system." *Educ. Credit Mgmt. Corp. v. Metz*, 2019 WL 1953119, at *5 (D. Kan. May 2, 2019). It becomes hard to see how this is not merely an exercise in cutting off one's nose to spite its face.

### D. <u>Third Prong</u>

The court found that Rosenberg had only missed 16 payments in almost 13 years, had actively sought deferments and forbearances, during which times he made payments when he could. "Petitioner missed only 16 payments in the almost 13 years since this Student Loan originated in April 2005. Supp. Resp., ECF No. 58. Ex. E. From April 2005 until April 5, 2015, the loan was in deferment or forbearance. *Id.* No payments were due and no late fees were charged. *See id.* at Exs. E & F. Thus, until April 2015—Petitioner was fully current on this debt and no payments were due" "Petitioner made 10 payments, in varying amounts, during the 26 months that the Petitioner was responsible for making payments, which is approximately a 40% rate of payment over a thirteen-year period. Additionally, the Petitioner did not sit back for 20 years but made a good faith effort to repay his Student Loan. He actively called and requested forbearance on at least five separate occasions, all of which were granted by the servicer." *In re Rosenberg*, 610 B.R. 454, 462 (Bankr. S.D.N.Y. 2020).[13]

---

[12] Store manage $53,515 and $337,645. Even at the highest of $120,000, $120,374 would be accumulated, forgiven and taxed. ECMC is projecting that Rosenberg will continue to experience a financial hardship for 25 years which will end up costing the taxpayers more.

[13]  "Rosenberg has lived in the basement of his shop, and also moved in with his family for a period of years.  His vehicle is 14 years old and has nearly 200,000 miles on it. Rosenberg has made minimal purchases of household necessities and has avoided purchase of luxury items."  The record reflects that Renville made certain voluntary payments on the loans to ECMC and worked significant amounts of overtime in an attempt to remain solvent and increase his already garnished wages. Consequently, this Court must affirm the determination of the Bankruptcy

ECMC makes four arguments. First, Rosenberg's repayment history does not reflect a good faith effort to repay his student loans. Second, Rosenberg has refused to consider rehabilitating his loan or applying for an income-based repayment plan. Third, Rosenberg has minimized rather than attempted to maximize his income. Fourth, Rosenberg has failed to minimize his expenses.

ECMC argues that Rosenberg simply "dodged paying for approximately 10 years out of the 12 years between disbursement and default." It is not clear what this is intended to mean. ECMC does not ever argue any of the bankruptcy court's decision was wrong.  ECMC is here equating—at least in part—Kevin's service in the war and statutory deferment under 20 U.S.C. 1098f with "dodging" his student loan creditors.  Kevin was eligible as a matter of law for combat deferment, and for an additional 13 months to readjust once he returned home. ECMC and its colleagues failed to credit him with that service, and instead registered it as a basic administrative forbearance. Rosenberg acknowledged less expensive housing is available in his area. (E.A. 325, ¶ 29.). It is unclear if ECMC is being sarcastic, or if ECMC thought Kevin was being sarcastic.  When someone says they cannot afford to move somewhere cheaper, it often means they not have enough cash to cover a new security deposit and moving costs. *In re Renville*, 2006 WL 3206126, at *8 (D. Mont. Nov. 3, 2006) ("While ECMC may subjectively find some of the Renvilles' household expenses unreasonable, ECMC has not demonstrated any specific clear error on the part of the Bankruptcy Court."). Third, Rosenberg has minimized rather than attempted to maximize his income. It is unclear what this means in the context of the appeal.  Is ECMC claiming that Kevin intentionally destroyed his life's work in order to avoid paying a debt that accounted for only 10% of his net worth?  As for maximizing income, ECMC

---

Court that Renville has made a good faith effort to repay his loans." *In re Renville*, No. ADV. 04-00101-RBK, 2006 WL 3206126, at *8 (D. Mont. Nov. 3, 2006)

fails to acknowledge that Kevin was earning $100,000 a year at the height of his business—more than most of the jobs its expert is recommending. Rosenberg made between $70,000 and $80,000 in 2007, yet did not make a single payment on his student loan that entire year. Rosenberg was paying upwards of $1000 per month on his private loans. And how is this a useful exercise? ECMC is comparing a person against an unreal idealized human student debt repayment machine.  Fifth, Kevin's health. Sixth, Rosenberg is qualified for the following employment: (i) as a legal assistant or paralegal, at salaries ranging from $42,000 to $120,000; (ii) as a retail store manager, at salaries ranging from $45,000 to $100,000 per year; and (iii) in customer service or entry level sales positions, at salaries ranging from $36,000 to $50,000 per year. (E.A. 223-227.) [14] "[t]he test under Brunner is not whether Debtor would be able to maintain a minimal standard of living if she made payments under REPAYE or another income-based repayment program," but rather "whether Debtor can maintain a minimal standard of living if she is forced to repay the actual outstanding student debt." *Graddy v. Educ. Credit Mgmt. Corp.*, 2020 WL 2988370, at *7 (N.D. Ga. June 4, 2020).And the question of whether the Petitioner could maintain a minimal standard of living while rehabilitating his Student Loan "is appropriately reserved for a case in which it is not hypothetical." *Id*

Second, ECMC argues to this court that the debtor should lose his case on the grounds that it refused to accept the settlement. And thus there is no small irony in the fact that while ECMC insisted this entire was in Kevin's control, ECMC was always within its control and power to offer more lenient terms.  Thus, ECMC was simply driving hard bargain and played its hand too . this was truly a offer that was beyond Kevin's control. "forced rehabilitation which

---

[14] Curiously Jesse Orgen never inquired in Kevin's credit profile. In re Jolie, 2014 WL 929703, at *9 (Bankr. D. Mont. Mar. 10, 2014)("The evidence is uncontroverted, and it shows that [debtor's] student loan debt prevents her, because of its effect on her credit score, from increasing her income, and this predicament will persist while the student loan debt remains.").

can "waive the required nine timely monthly payments." *In re DuBois*, 2015 WL 9238960, at *6 (Bankr. D.S.D. 2015).   In fact, in certain circumstances ECMC never disclosed, "the United States may well have been *required* to waive them: "Neither the guaranty agency nor the Secretary [of Education] shall demand from a borrower as monthly payment amounts . . .more than is reasonable and affordable based on the borrower's total financial circumstances." 20 U.S.C. § 1078–6(a)(1)(B). *In re DuBois*, 2015 WL 9238960, at *10–11 (Bankr. D.S.D. 2015).

Likewise, ECMC's demand that Kevin available himself of loan consolidation may have been even more treacherous. *Nesselrode v. U.S. Sec'y of Educ., Agency*, 2017 WL 7520616, at *6 (S.D. Ohio July 25, 2017) (clarifying that loan consolidation is not mandatory but within the Secretary's discretion and done where practicable). ECMC argued that Kevin's refusal to consolidate was a sign of bad faith, and yet it was ECMC who that in so doing, it would become a post-petition debt. The Second Circuit based its affirmance in part on the fact that the debtor was free to try again.   "Judge Haight's order was without prejudice to Brunner's seeking relief pursuant to R. Bankr. P. 4007[.]" *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395, 397 (2d Cir. 1987).   In *Easterling*, the Second Circuit reiterated this principle and stated that, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 232 (2d Cir. 2012) (holding that debtor who finished a bankruptcy ten years earlier could still reopen and seek a finding of undue hardship and it was a material misrepresentation to state otherwise). And this court has recently held that the "If courts accepted that debtors must enroll in income-based repayment programs the result would be that debtors could simply be 'trading one non-dischargeable debt for another.'" *In re Lozada*, 594 B.R. 212, 228 (Bankr. S.D.N.Y. 2018), *aff'd,* 604 B.R. 427 (S.D.N.Y. 2019).   "The origin of the good faith requirement was

17

likely the fact Marie Brunner, the namesake of the *Brunner* test, 'filed for discharge within a month of the date the first payment of her loans came due.'" *Graddy* at \*7. Now that student loans are dischargeable indefinitely, it cannot stand to reason that students are not permitted to use the bankruptcy laws for their intended purposes. *In re James Wilson Assocs.,* 965 F.2d 160, 170 (7th Cir.1992) ("It is not bad faith to seek to gain an advantage from declaring bankruptcy— why else would one declare it?").

### E.  Alternative Grounds

"[A]n appellee can seek to sustain a judgment on any ground with support in the record [and] it is not necessary that the appellee file a notice of cross-appeal. *See Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.,* 38 F.3d 1279, 1285–86 (2d Cir.1994).   In many 523(a)(8) proceedings, "determinations will be nothing more than mere guesswork, without any reasonable degree of certitude. Such a failure to engage in a grounded, realistic analysis not only creates the danger of an overly-strict application of *Brunner,* but also raises legitimate concerns about both the integrity of the judicial decision making process, as well as the public's perception of the process." 573 B.R. 579, 605 (Bankr. E.D. Pa. 2017), *reversed on other grounds, DeVos v. Price,* 2018 WL 558464 (E.D. Pa. Jan. 24, 2018). ECMC has created a nearly impenetrable paradox: since the debtor has the burden in all the hardship discharges, no matter what the debtor argues, ECMC can either say they are applying the fact under the wrong prong, or else they have misinterpreted a bad thing as a good thing, or vice versa. *Griego v. Salazar*, 2008 WL 11409093, at \*9 (D.N.M. Sept. 25, 2008) (discussing paradoxes of summary judgment). But the legal system has a variety of tools to combat this sort of cynical gamesmanship. *See e.g., Armstrong v. Collins*, 2010 WL 1141158, at \*31 (S.D.N.Y. Mar. 24, 2010) ("The doctrine of quasi-estoppel "forbids a party from accepting the benefit of a transaction or statute and then

subsequently taking an inconsistent position to avoid the corresponding obligations or effects."). *Toyo Tire & Rubber Co. v. Hong Kong Tri-Ace Tire Co.*, 281 F. Supp. 3d 967, 983 (C.D. Cal. 2017)("because this concerns the integrity of the judicial process rather than the harm to parties, the traditional rules of mutuality need not apply 'if a litigant seems to be playing the courts for fools.'")(quoting 18B Charles Wright, Arthur Miller, Federal Practice and Procedure, § 4477.).

For example, ECMC argues that Kevin's lack of children renders him able to repay his loans. ECMC Brief.  But somewhere, right now ECMC is arguing that a person with a child cannot prove they have worked in good faith to repay the loan.  *In re Harvey*, 2013 WL 4478926, at *4 (Bankr. D. Colo. Aug. 20, 2013) ("ECMC suggests the Harveys' decision to have a fourth child after incurring the student loan debt represents a personal choice which intentionally creates or contributes to their hardship.").  *In re Myers,* 280 B.R. 416, 422 (Bankr.S. D. Ohio 2002) (ECMC's argument that the large number of children constitute "additional circumstances" under the *Brunner* Test."). At any point, ECMC argues that Kevin is in good health, is relatively young and thus has no true hardship. But if Kevin were to return next year with his back deteriorated.  ECMC would simply have argued that Kevin chose to go to war, and he cannot now complain of his injuries. *Educ. Credit Mgmt. Corp. v. Curiston*, 351 B.R. 22, 27 (D. Conn. 2006)("According to ECMC, because [debtor] suffered from PTSD before she bound herself to the student loan agreement, as a matter of law, she cannot now argue that her physical and mental health condition is an "additional circumstance."). ECMC insisted that Kevin's second prong must fail because of his failure to maximize income. And yet ECMC has also argued that "financial concerns are not properly considered 'additional circumstances." *In re Shaffer*, 2011 WL 6010240, at *5 (Bankr. S.D. Iowa Dec. 1, 2011), *aff'd,* 481 B.R. 15 (B.A.P. 8th Cir. 2012).

ECMC's arguments about IBR are immaterial because none of them would affect the outcome of the suit.  Kevin did use IBR, which ECMC ignored.  ECMC then argued his failure to do it even when they promised it would be $0 a month was bad faith.  But if Kevin had been in IBR when this began, ECMC would have argued that payments of $0 are a total bar to a hardship finnding. *In re Greene*, 484 B.R. 98, 112–13 (Bankr. E.D. Va. 2012), *aff'd,* 573 F. App'x 300 (4th Cir. 2014)(ECMC "seeking a determination that if participation in the Income Contingent Plan results in a monthly payment of zero, then, as a matter of law, the 'undue hardship' showing required by 11 U.S.C. § 523(a)(8) does not exist."). *In re Reagan*, 587 B.R. 296, 301 (Bankr. W.D. Pa. 2018) (same).  Some of this is surely consistent with devoted advocacy.  But ECMC cannot continue to argue three sides of every issue. ECMC has prevailed in so many cases on so many conflicting theories, it has created a body of law that it can no longer use.

Accordingly, this court can estop ECMC from continuing to take such stark and contradictory positions against largely pro se debtors.

**F.    ECMC's Cross Appeal**

"Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed. *Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014). "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion    does    not    meet    the    movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

However, when the nonmoving party responds, Rosenberg's failure to challenge this below "a distinction between *pro se* and counseled responses is appropriate.  In the case of a *pro se,* the district court should examine every claim or defense with a view to determining whether summary judgment is legally and factually appropriate." *Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014). And it will be too late on the reply. "Arguments that first appear in a reply brief are deemed waived." *Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796, 803 (7th Cir. 2006).  ECMC's motion contained no evidence about the debt itself.  At the hearing, the court demanded the actual documents E.A. at 127. ("THE COURT: And lay it out so I can see it. I don't want a data dump either. I want it in a format that everybody can read . . .I want a good record of the current contract and the total amount of payments.").  ECMC thereafter submitted what it had obtained.  ECMC's affiant testified that she had made a careful study of the requirements of "34 C.F.R. § 682.208, .209, and .411."  Contrary to its claim that ECMC is the holder and owner of the loan, ECMC's own documents state that it sold Rosenberg's loan on April 6, 2018 to Deutsche Bank. E.A. at 368.  This is only supposed to happen after the borrower has rehabilitated the loans. 20 U.S.C. 1078-6 ("[U]pon securing 9 payments made within 20 days of the due date during 10 consecutive months, [the agency] shall—if practicable, sell the loan to an eligible lender.") [15]

| | | | Lender |
|---|---|---|---|
| 04/06/2018 | CURRENT | 807929 | DEUTSCHE BANK ELT SLC TRUST |
| 04/22/2005 | 04/05/2018 | 826878 | CITIBANK, NA ELT STUDENT LOAN CORP |

---

[15] And yet the exhibits attached demonstrate virtually no compliance with any of those regulations. The NYHESC letter, for example, submitted states that ECMC was provided "seventy-five (75) records," but very few of those were turned over to the court.

On April 8, 2018, ECMC sold the government's property to Deutsche Bank. ECMC also seems to have taken $165,380 from the government's reinsurance account to pay a claim that was never actually made to Citibank.  :

| | Date | Cumulative Amount | Reason Code | Date Paid | Rate Code | Ind. of Rehab. |
|---|---|---|---|---|---|---|
| Insurance Claim Payment: | 12/29/2017 | $165,380 | DF | | | |
| Insurance Claim Refund: | N/A | N/A | | | | |
| Reinsurance Claim Payment: | 01/08/2018 | $165,380 | DF | 01/17/2018 | 1 | |
| Bankruptcy Claim Refund: | N/A | N/A | | | | |
| al Reinsurance Payment Request: | N/A | N/A | | | | |
| Repurchase: | N/A | N/A | | | | N/A |

What the effect of that is, Rosenberg does not know. See *Calise Beauty Sch., Inc. v. Riley*, 1997 WL 630115, at *3 (S.D.N.Y. Oct. 9, 1997)("HDIL specifically challenged the inclusion of 10 loans from East River Savings Bank ("ERSB") . . .on the grounds that those loans were not yet in default when the New York Higher Education Services Corporation ("NYHESC")—the relevant guaranty agency involved in this dispute—reimbursed ERSB, and thus, these loans should not have been include.").

But perhaps in light of what must in the very least be a failure of proper bookkeeping, we could all take a step back from the name calling.  Kevin Rosenberg is not as he was painted by ECMC in their opening brief.  He has dealt honesty with his creditors, and with the Court.  He is merely trying to get a second chance.

## CONCLUSION

For these reasons, the Court should affirm the bankruptcy court's granting of summary judgment in favor of Rosenberg and denial of ECMC's Cross-Motion and determine that Rosenberg's loans were subject to discharge as an undue hardship.

Dated June 22, 2020

Respectfully submitted,

By: /s *Austin C. Smith*

**SMITH LAW GROUP**
Austin C. Smith,
3 Mitchell Place, Suite 5
New York, NY 10017
917.992.2121
Counsel for Petitioner-Appellee